WHORTON, imp., vs. WEBSTER and another, imp.

*November 27 — December 12, 1882.*

FORECLOSURE OF MORTGAGE: WASTE. *(1) Accounting to junior mortgagee for waste committed after judgment and before sale on foreclosure of senior mortgage. (3) Claim of junior mortgagee in such case a legal one; (4) and to enforce it he need not foreclose his mortgage.*

DAMAGES: *(2) For wilful wrong not to be mitigated by beneficial acts of wrong-doer.*

1. Under the decisions of this court on former appeals and a stipulation of the parties, it is *held* that the accounting to which a junior mortgagee was adjudged to be entitled (50 Wis., 53) should have

been strictly confined to determining the value of timber cut upon the mortgaged premises by the grantees of the mortgagor (who were also the owners of an interest in the senior mortgage) between the date of the judgment in the action to foreclose the senior mortgage and the date of the sale thereon, in violation of an injunction granted in such action.

2. Where a wrong has been wilfully done, the courts are not inclined to permit a mitigation of the damages by taking into account other lawful acts of the wrong-doer which may be a benefit to the party claiming such damages.

3. The claim of a junior mortgagee to compensation for an injury to his mortgage interest by acts of waste, committed in violation of an injunction granted in an action to foreclose a senior mortgage, is a purely legal claim, and if asserted in the proceeding to foreclose such senior mortgage, he has the same right in that proceeding which he would have in a direct action to recover the damages.

4. After the foreclosure of a senior mortgage and a sale thereunder, it is unnecessary for a junior mortgagee to foreclose and sell under his mortgage in order to maintain an action against a wrong-doer for an injury to his mortgage interest.

[5. Whether in any case a mortgagee can require a grantee of the mortgagor, who is in possession of the mortgaged premises, but who has not covenanted to pay the mortgage debt, to account for the rents and profits, or have a receiver appointed to receive such rents and profits and have them applied to the payment of the debt, is not determined.]

APPEAL from the Circuit Court for *Wood* County.

The case is thus stated by Mr. Justice TAYLOR:

"This action was brought to foreclose a mortgage which, at the time the action was commenced, was owned by Scott and *Whorton* in equal shares. It was originally given to and owned by Scott, and he sold one half of the debt and mortgage to *Whorton.* *Webster* had a mortgage on most of the real estate covered by the Scott mortgage, which was given by the same mortgagors, and at the same time, but with an express stipulation contained therein that it should be subsequent to the Scott mortgage in fact. Shortly after both mortgages were executed, the mortgagors conveyed the mortgaged premises for a valuable consideration to the part-

ner of the plaintiff *Whorton*, and under and by virtue of that conveyance the *Whortons*, as partners, took the actual possession of the mortgaged premises, and occupied and used the same down to the time of the commencement of the action to foreclose the Scott mortgage, and from that time to the present. The plaintiffs obtained a judgment for the sale of the mortgaged premises, and for the foreclosure of the Scott mortgage, May 30, 1877. From that judgment an appeal was taken by *Webster* to this court; that appeal was decided by this court at the January term, 1878. See 44 Wis., 185. Upon that appeal it was contended by *Webster* that the mortgage interest of *Whorton*, being the half thereof, was merged in the title purchased by the *Whortons* from the mortgagors, and that as to such half of the Scott mortgage it must be held to be satisfied as against *Webster's* mortgage. This court held that there was no merger of *Whorton's* interest in the Scott mortgage, and that the owners could collect the whole amount due on such mortgage from the mortgaged premises before the claim of *Webster* by virtue of his mortgage could attach. It was also held in that case that the *Whortons* were not bound to account for the use of the mortgaged premises; that they were in possession as owners of the equity of redemption, or of the title of the mortgagors, and as such owners were entitled to the possession of said mortgaged premises without accounting for the use thereof.

" The cause was remitted to the circuit court, but as the whole amount was not due upon the Scott mortgage, no sale was made until after the whole became due; and on October 3, 1879, the whole amount of the debt being then due, the plaintiffs petitioned the court for an order to sell the whole mortgaged premises for the payment of the whole debt. *Webster* resisted this order so far as it directed the sale for the whole of the debt due on the Scott mortgage, and made a claim that there should be deducted from that part of the

debt due to the *Whortons* the value of a large quantity of pine timber which they had cut and taken from said premises since the date of the judgment, and in violation of the provision in the judgment which restrained the *Whortons*, who were in possession of the mortgaged premises, from committing any waste thereon, and that the direction should be for the sale for the amount due on the mortgage, less the value of such timber. In support of this claim, *Webster* filed affidavits showing the fact that a large quantity of timber had been cut and removed from the mortgaged premises by the *Whortons* after the judgment; that by reason thereof the mortgaged premises had been greatly depreciated in value, to the detriment of his mortgage interest therein; and that the original mortgagors were insolvent, and unable to pay the debt due to *Webster;* and thereupon moved the court to modify the order of sale accordingly. After hearing this motion the circuit court denied *Webster's* application. The order denying the application of *Webster* contains the following recital, among others: '*Webster* asked that the said *Whortons* be required to account in this proceeding for the value of the timber so cut from said lands, and that the amount thereof be applied in reduction of the judgment herein;' and then proceeds as follows: ' It is ordered that the application of said *Webster* to compel said *Whortons* to account in this proceeding for the value of the timber by them cut from said lands since the entry of said judgment be and the same is hereby denied.'

" From this part of the order denying the relief asked by *Webster* he again appealed to this court; and in his notice of appeal he limited the appeal to so much of the order of sale 'as directs a sale of the mortgaged premises for the whole amount of the judgment, without requiring the *Whortons* to account for the timber cut by them from the mortgaged premises since entry of judgment, and refuses to require said *Whortons* to account for the timber so cut.'

Upon this appeal no stay of proceedings was had, and the mortgaged premises were advertised for sale, and on the day of sale they were struck off in two parcels, one to *Webster* and the other parcel to one Lyman, for more than enough to pay the whole amount due on the Scott mortgage. This was December 2, 1879. But the purchasers at such sale were not able to pay their bids; and, upon the sheriff announcing that he should re-offer the same for sale, the following stipulation was entered into by the parties:

" ' Whereas, a sale of the mortgaged premises, described in the judgment in the above-entitled action, was had under the judgment and order of sale herein duly rendered, entered, and made, a regular notice of sale, in accordance with law and the practice of said court on the 2d day of December, 1879, and the said premises at said sale were struck off to bidders therefor as follows:

" ' The first subdivision of said premises, as per said judgment and order of sale, to the defendant *Hiram W. Webster*, for the sum of ten thousand and ten dollars ($10,010); and the second subdivision of said premises, as per said judgment and order of sale, to Sidney Lyman, for the sum of $44,450; and after the said premises were struck off, as aforesaid, further proceedings were postponed until the following day, being December 3, 1879, at ten o'clock, A. M., at which time the said parties and their counsel and the said bidders, and also the said sheriff of the said county, were on hand at the time appointed, and the said *Webster* and the said Lyman both having failed to pay over the amounts so as aforesaid bid by them respectively, and the said sheriff for said reasons having declared forfeited the said bids of the said *Webster* and said Lyman, and being about to again offer the said premises for sale, pursuant to the said order and judgment:

" ' Now, it is hereby stipulated and agreed by and between the plaintiff *William G. Whorton* and the defendant *John H.*

*Whorton* on the one part, and defendant *Hiram W. Webster* and the said Lyman on the other part, that the said *Whortons* shall bid or cause to be bid, at said sale aforesaid of the mortgaged premises, such sums as shall amount in the aggregate to not less than fifty thousand dollars; that said *Webster* and Lyman, and each of them, waive all right whatsoever under their said bids, and all irregularities, if any, in the proceedings had for the sale of said mortgaged premises herein, including the said resale to be had pursuant to this stipulation; that the said sale to be made as aforesaid to be confirmed at the December (1879) term of this court without any notice whatever, except the filing of the sheriff's report of sale, of which all parties will take notice. It is further agreed that said mortgaged premises may be offered for resale, as hereinbefore provided for by subdivisions as specified in said judgments and order of sale, instead of by separate parcels. It is also agreed between the said *Whorton* and the said *Webster* that all rights that the said *Webster* may have involved in a certain appeal now pending in the supreme court of Wisconsin, by said *Webster*, from an order of the circuit court refusing to the appealing plaintiffs in this action to account, be in no manner affected by this stipulation, but all controversies in any manner involved in this action affecting the mortgaged premises herein, except those involved in the said appeal, are hereby settled and ended.

" ' *Dated December*, 1879.'

"This stipulation was executed by the two *Whortons*, *Webster* and Lyman, *Webster* having counsel present with whom he advised at the time. In pursuance of the order of sale and this stipulation, the mortgaged premises were again offered for sale December 3, 1879, and were struck off to the *Whortons* for about $50,000, being about $360 more than enough to pay the whole amount due on the Scott mortgage, with costs and costs of sale. The sheriff's report of sale was made and the sale confirmed December 9, 1879. The second

appeal by *Webster* to this court had not been heard when this stipulation, sale, and confirmation were made, nor were these facts brought to the attention of this court upon the hearing of such appeal.   In the January term, 1880, the second appeal of *Webster* was heard and determined by this court. Upon this appeal it was contended by the *Whortons* that, by virtue of certain stipulations contained in the Scott and *Webster* mortgages, they were authorized to cut certain quantities of pine timber on said lands even after judgment entered requiring them to refrain from committing any waste upon said lands.   This court held that the *Whortons* had no right under the stipulations in the mortgages to cut the timber from the land after the judgment of foreclosure was entered, May 30, 1877, and it was further held that, 'in any view which can be properly taken of this case, the *Whortons* should be held to account for the value of the pine timber cut by them or either of them from the mortgaged premises since the rendition of the judgment of foreclosure to the extent of their mortgage interest, and when ascertained it should be applied *pro tanto* in satisfaction of their half of the mortgage, and the circuit court erred in granting the motion without such accounting and application of such value as asked by said *Webster;*' and the judgment of the court was 'that that part of the order of the circuit court appealed from is reversed, with costs, and the cause remanded for further proceedings according to the opinion.'   [See 50 Wis., 53.]

"Upon the *remittitur* from this appeal, the defendant *Webster* made a motion to set aside the mortgage sale, the order confirming the same, and the deed issued on said sale to the *Whortons*, and for an order to take an account of the value of the timber cut by them or under their authority from the mortgaged premises since the rendition of the judgment of foreclosure, and for the value of the use of such premises since such judgment; and that when the value of

such timber and use be ascertained, it be applied in reduction of the half of said judgment belonging to *William G. Whorton*, and that such application be made at the date of the receipt of such value by said *Whorton;* and for a reference to take the account. Upon this motion the circuit court, November 11, 1880, made the following order:

"' Ordered that an accounting be had herein to embrace the following points: (1) The value of all timber cut by or under authority, direction, or permission of the plaintiff *William G. Whorton*, or the defendant *John H. Whorton*, or both of them, from the premises described in the judgment herein, between May 30, 1877, and December 3, 1879; (2) the value of the use of said premises during said time; (3) the amount expended by *Whortons* during such time in permanent improvements and repairs upon said premises, showing the nature of the improvements and repairs, and the amount by which such improvements and repairs increased the salable value of said premises; (4) the amount paid by the *Whortons* for taxes on said premises during such time, and all payment of taxes claimed by them to be an offset against the amount chargeable against them for timber cut and use of premises, showing what taxes were so paid, and the nature and source of such taxes; (5) the amount paid by *Whortons* on compromise of suits to recover from them part of the said premises, showing the basis of such claims, and the nature and source thereof. That George Carey, of Oshkosh, Wisconsin, be and he is hereby appointed a referee to take proofs of *Webster* on the one part, and *Whortons* on the other part, in relation to such items, and same to be the basis of such account; that said referee sit at Grand Rapids to take such proofs; that on the taking of such proofs by such referee the said *Whortons* produce such books of account, and all such books of account as they may have, showing the amount of timber cut by them from said premises, and the value of the use of such premises, including their books of account kept at their

said mill wherein they have sawed the timber cut on said premises; that such proofs be taken on notice of ten days in writing, which may be given by referee to both parties, or by either party to the referee and the opposite party; that on the coming in of the report on such proofs the account be adjusted by this court, when this court will determine what items of such accounting be allowed and at what sum (this court does not now determine what items should be allowed to *Whortons* in offset against the value of timber cut and use of premises, if any); that upon final accounting the amount found against the *Whortons*, on account of use of premises and timber cut (over offsets, if any, allowed), be paid to *Webster* by *William G. Whorton* and *John H. Whorton* within sixty days after determination of such amount by final order of this court in that behalf; that upon failure so to pay by said *Whortons*, the sale of the mortgaged premises heretofore made herein be set aside, and also the order confirming same, and the sheriff's deed, and that each and every one thereof be vacated, as also all proceedings thereunder, and that thereupon a further accounting be had of the timber cut by said *Whortons*, and the value of use of said premises subsequent to sale on judgment herein, to wit, subsequent to December 2, 1879.'

"Under this order a large amount of testimony was taken by the referee and reported to the court, and thereupon the court found as facts that the *Whortons* had cut about 9,000,000 feet of pine timber from said lands; that they made a net profit on such pine timber of $3.15 per thousand feet, and other timber sufficient to make 5,522 thousand shingles, on which they made a net profit of 60 cents per thousand; that the *Whortons* had taken from the mill on said premises machinery of the value of $600; and that the use of the mill in 1877, while the *Whortons* were sawing logs not taken from the premises subsequent to the judgment, was worth $1,800. These items, with interest added, were

charged to the *Whortons* and amounted in all to the sum of $39,670. The *Whortons* were credited for taxes paid, improvements made, and for repairs, and for money expended in clearing up the title to some of the lands, with interest added, the sum of $11,525. This deducted from the amount charged to them would leave $28,145 to be accounted for by them and applicable to the payment of the *Webster* mortgage, which amounted at the date of the final order to the sum of $16,191.70. From this sum the surplus of the mortgage sale is deducted, $369.05, leaving the *Webster* mortgage $15,822.65. Upon these findings the following order was made:

" 'Now, therefore, on motion of Moses Hooper, attorney for the defendant *Hiram W. Webster*, it is by this court ordered that the plaintiff *William G. Whorton*, and the defendant *John H. Whorton*, do pay to the defendant *Hiram W. Webster*, or to his attorney herein, the sum of fifteen thousand eight hundred and twenty-two (15,822) dollars on account of such rents, profits, and value of timber cut, and the further sum of $397 costs of this accounting, amounting in all to the sum of $16,219, with interest thereon at seven (7) per centum per annum, and that they pay one half of the same, with interest thereon, within sixty (60) days, and the other half of the same, with interest thereon, within one hundred (100) days after the service of this order upon either of them. And it is further ordered that, in default of payment thereof within the times specified herein, the defendant *Hiram W. Webster* has leave to apply to this court, on proof of such nonpayment, to set aside the sale of premises upon the judgment of foreclosure herein, and for such other and further relief in that behalf as may be just. And it is further ordered that, if said *Whortons* fail to pay said moneys or any part thereof as above ordered, the said *Whortons*, and their servants and their employees, be and they are hereby restrained and enjoined from cutting any pine or other tim-

ber on the premises described in the judgment of foreclosure herein, and from committing any waste or injury to or upon any of said premises described in said judgment, after such default, until payment thereof.   Ordered, that this order be served by delivery of a certified copy thereof to said *Whortons*, personally, or if either of them cannot be found, then by leaving a certified copy thereof at the residence of such one of them at Appleton, Wisconsin.   Also ordered that the clerk of this court pay to *Hiram W. Webster*, or his attorney, the sum of three hundred and sixty-nine (369) dollars, paid into court as surplus on sale of premises under judgment of foreclosure herein, over amount due plaintiffs and costs of sale.'

" To this final order, and the findings of fact and conclusions of law upon which it was based, the *Whortons* filed exceptions, and appealed from the order to this court."

For the appellants there were briefs by *Webb & Cochran* and *Geo. R. Gardner*, as attorneys, and *Wm. F. Vilas*, of counsel, and oral argument by *Mr. Vilas* and *Mr. Gardner*.

*Moses Hooper*, for the respondent, *Webster*.

TAYLOR, J.   There are some things which were settled by the two former appeals in this case.   On the first appeal it was settled that the undivided half of the Scott mortgage was not merged into the title in fee which the *Whortons*, or one of them, obtained from the mortgagors of Scott and *Webster*, and it follows, as a logical conclusion, that their possession was the possession of the owner of the title in fee, and not the possession of a mortgagee.   It is evident that the purchase of the undivided half of the Scott mortgage did not give the *Whortons* any right to the possession or use of the mortgaged premises.   This they understood perfectly; and, in order to procure the right of actual possession and use of the property, pending proceedings to foreclose the Scott mortgage, they purchased the title of the mortgagors, and

the right of possession, and the possession of the *Whortons*
should therefore be referred to that title, which conveyed the
right of possession and use, rather than to the conveyance of
the mortgage interest, which did not and could not give any
right of possession as against the right of the mortgagors.
This was the view this court took of the case on the first
appeal.

On the second appeal this court held a like view of the situation of the parties. It is true, the learned counsel for the
present respondent made a point in his argument on that appeal that the *Whortons* should be treated as mortgagees in
possession, after the judgment was entered, so far as *Webster*
was concerned; but the main ground of his argument was
that, as the judgment restrained all the defendants, including the *Whortons*, from committing any waste on the land
or doing any other act that might impair the value of the
said mortgaged premises at any time between the date of the
judgment and the date of the sale, such restraining clause
was as much for the benefit of *Webster's* mortgage interest
as for the interest of the owners of the Scott mortgage, and
that to the extent the *Whortons* had wasted the land and
lessened the value of it as security for the *Webster* mortgage,
the claim of the *Whortons* under the Scott mortgage should
be abated so as to increase the surplus money on the sale applicable to the payment of their mortgage. To this extent,
and to this extent only, this court upon such appeal held the
claim of *Webster* good as against the *Whortons'* interest in
the Scott mortgage. This is evident from what was said by
Justice ORTON in the closing sentence of his opinion. We
are also of the opinion that *Webster* limited himself to that
relief by his appeal from the order made by the circuit court.
The circuit court, in refusing *Webster's* motion, limits the
claim made by *Webster* to an account for the value of the
timber cut by the *Whortons* since the judgment, and makes
no mention of any claim made for the rents and profits of

the mortgaged premises in addition to the value of such timber. And the appeal of *Webster* was from "so much of the order as directs a sale of the mortgaged premises for the whole amount of the judgment, without requiring the *Whortons* to account for the timber cut by them from the mortgaged premises since the entry of judgment, and refuses to require said *Whortons* to account for the timber so cut." If *Webster* had desired to review the question of his right to have the *Whortons* account for the rents and profits of the mortgaged premises as well as for the value of the timber cut, he should have appealed from the order for refusing him that relief also.

The stipulation afterwards and pending the appeal made by *Webster* with the *Whortons*, allowing the sale to be made and confirmed, and waiving all irregularities, if any, in the proceedings had for the sale of said mortgaged premises herein, including the resale of the same, etc., saving to himself only "all the rights that he may have involved in a certain appeal now pending in the supreme court of Wisconsin by said *Webster* from an order of the circuit court refusing to compel plaintiffs in this action to account, be in no manner affected by this stipulation, but all controversies in any manner involved in this action affecting the mortgaged premises, except those involved in said appeal, are hereby settled and ended," clearly limits *Webster* to the claim made on such appeal. There is no pretense but this stipulation was fairly entered into by *Webster* with a full understanding of its effect. It seems to us very clear that this stipulation leaves nothing unsettled between *Webster* and the *Whortons* in regard to this foreclosure judgment and sale, except such rights and such alone as were involved in the second appeal to this court; and, as said above, that appeal only presented to this court for review, the single question whether the *Whortons* should "account to *Webster* for the timber cut by them from the mortgaged premises since the

entry of judgment." Upon that appeal this court determined that the *Whortons* must account for the timber so cut, and have the value of such timber deducted from the amount due on their undivided half of the Scott mortgage.

We think the former decisions in this case, and the stipulation of *Webster*, have limited the right of *Webster* to a single question, viz., the value of timber cut from the mortgaged premises between the date of the judgment and the date of the sale of the mortgaged premises. Fortunately, this view of the case renders it unnecessary to determine the question whether in any case a mortgagee can, as against a grantee of the mortgagor in possession of the mortgaged premises, who has not covenanted to pay the mortgage debt, require such grantee to account for the rents and profits of the mortgaged premises, or to have a receiver appointed to receive such rents and profits, and have them applied in payment of the mortgage debt. The learned counsel for the appellant has made a very able argument against the right of the mortgagee. This argument was not answered by the learned counsel for the respondent, for the reason that the point was not made or argued in the printed brief of the appellant served on him. We therefore express no opinion on the subject.

The circuit court was in error in opening the question so wide as to include rents and profits and other acts of waste, and in treating the *Whortons* as though they were mortgagees in possession, and requiring them to account to *Webster* as if he had brought an action to redeem the mortgaged premises. The accounting should have been strictly confined to determining how much the premises had been lessened in value by the removal of the timber therefrom between the date of the judgment and the date of sale, and this can, perhaps, be approximated to as well by getting at the value of the timber standing on the land before the same was cut and removed by the *Whortons*, or what in lumbermen's language is called "stumpage," as in any other way.

*Webster* is clearly not entitled to any other value of the timber. He is only to be protected in his mortgage interest by awarding to him compensation for that which diminishes his security. He cannot, in this proceeding, appropriate the labor and skill of the *Whortons* to the payment of his mortgage.

It is said by the learned counsel for the respondent that the evidence now before the court will enable us to determine the value of such stumpage. We are unable to agree with the learned counsel on this point. The case was not tried on any such theory, and the evidence, especially on the part of *Webster*, was not directed to the point in issue, and there is no finding of the circuit judge on that question. As the case is now presented to this court, we should be unable to make any fair estimate as to the value of the stumpage taken by the *Whortons*. As we confine *Webster* strictly to the lessened value of the mortgaged premises by reason of the waste committed by the *Whortons*, we are of the opinion that they cannot offset against such waste the value of any improvements made on the land by them which may have increased the value thereof. And, on the other hand, *Webster*, in fixing the value of the timber cut and removed, cannot have the value as it has been enhanced by any improvements made by the *Whortons*, but he must be content with such value as the timber would have independent of such improvements. *Webster* is not entitled to claim the value of the timber as enhanced by the improvements made on the mortgaged premises by the *Whortons*, without allowing them for such improvements as a setoff; and as we think they cannot set off the improvements against the waste, they ought not to have their liability for waste increased by such acts as are a benefit to the estate and so an advantage to *Webster*.

The liability of the *Whortons* to *Webster* for cutting and removing the timber, is based solely on the ground that such cutting and removal was a wrong wilfully done by the *Whor-*

*tons* to the prejudice of *Webster;* and when a wrong of that kind is committed the courts are not inclined to permit a mitigation of the damages by taking into account other lawful acts of the wrong-doer, which may be a benefit to the party claiming damages for such wilful and wrongful acts. The acts for which compensation is sought by *Webster* were prohibited by the judgment of the court in an action in which the *Whortons* were parties; and as this court has held, on the second appeal, such prohibition was for the benefit of *Webster*, it cannot now be claimed that the cutting and removal was done in good faith. It is said that if *Webster* comes into a court of equity to ask relief, he must do equity. This claim of *Webster* to be compensated for the damage done to his mortgage interest by the wrongful acts of the *Whortons* is a purely legal claim, and could undoubtedly be enforced in what would formerly have been denominated an action on the case. He made his claim in the present proceeding as being an appropriate means of obtaining compensation for the wrong done him, and his right to obtain relief in this action has been determined by this court on the second appeal. We think he has the same right in this proceeding that he would have in a direct action to recover his damages for the waste committed by the *Whortons*. *Frankland v. Moulton*, 5 Wis., 1; *Jones v. Costigan*, 12 Wis., 677; *Van Pelt v. McGraw*, 4 N. Y., 111; *Gardner v. Heartt*, 3 Denio, 232; *Yates v. Joyce*, 11 Johns., 136; *Lane v. Hitchcock*, 14 Johns., 213; *Smith v. Moore*, 11 N. H., 55; *Stark v. Redfield*, 52 Wis., 349; *Fairbank v. Cudworth*, 33 Wis., 358.

The foreclosure of the Scott mortgage, and a sale under such foreclosure, rendered it unnecessary for *Webster* to proceed to foreclose and sell under his mortgage in order to place himself in a condition to maintain an action for the damage done to his mortgage interest. The foreclosure of the Scott mortgage bars *Webster* of all claim to the mortgaged premises, and for the purpose of maintaining an action

against a wrong-doer to recover damages for an injury to his mortgage interest, he should be treated the same as though his mortgage had been foreclosed, and he had obtained title to the mortgaged premises. The *Whortons* cannot offset taxes paid by them on the mortgaged premises. They being in possession, and using the mortgaged premises, were under a legal duty to pay all taxes assessed thereon. The taxes must be deemed to have been paid and the permanent improvements made for the purpose of protecting and making more profitable the use of the premises to the *Whortons*, who, as between themselves and *Webster*, must be treated as grantees of the mortgagors remaining in possession of the mortgaged premises, and entitled to the use of the same. The mortgage of *Webster* was a continuing security, and covered all permanent improvements made by the *Whortons* as soon as made, and was as much a lien on them when they came into existence, as it was upon the lands at the time the mortgage was executed. That lien of the *Webster* mortgage cannot be removed for the benefit of the *Whortons*, and to mitigate the claim of *Webster* to be compensated for the damage done to his security by the wilful waste committed by them on the mortgaged premises. As we hold *Webster* bound and limited in his claim for damages by his stipulation made in the action, to his claim for damages occasioned solely by the cutting and removing of timber by the *Whortons*, we are also inclined to hold that by the terms of that stipulation the *Whortons* have waived any claim to compensation for improvements made on the mortgaged premises as a setoff to *Webster's* claim for waste. The provision in the stipulation is that "all controversies in any manner involved in this action, affecting the mortgaged premises herein, except those involved in said appeal, are hereby settled and ended." This, we think, leaves nothing open for controversy except the question whether *Webster* should be allowed to deduct from the *Whortons'* interest in

the Scott mortgage the value of the timber cut and removed by the *Whortons* between the date of the judgment and sale. This court held on the second appeal that *Webster* was entitled to have such value so deducted; and when that value is properly ascertained and deducted, the controversy must be ended.

There is no reason for vacating the sale under the Scott mortgage. The *Whortons*, being the purchasers under that sale, take the premises subject to the claim of *Webster* for the timber cut. By the decision of this court *Webster* is entitled to have the value of the timber cut deducted from the amount due on *Whorton's* half of the Scott mortgage, and upon the mortgage sale so much only of the proceeds of that sale shall be applied to their share of the Scott mortgage as is left after deducting the value of such timber. Whatever of the proceeds of the sale remain after so applying the value of such timber belong to *Webster*, as the owner of the second mortgage, and if it be not paid into court by the *Whortons*, who were the purchasers, such sum would, as between the *Whortons* and *Webster*, be a first lien upon the lands in the hands of the *Whortons*, and the court can, in case the money be not paid within a time to be fixed in its order, direct a sale of the mortgaged premises to pay the same, without in any way interfering with the original mortgage sale.

*By the Court.*— The order of the circuit court referring the matter to a referee, and the final order of said court from which this appeal is taken, are reversed, and the cause is remanded with directions to said court to ascertain the value of said timber cut and removed from the mortgaged premises by the *Whortons*, or either of them, between the date of the judgment and the date of the sale of the mortgaged premises; such value to be ascertained as in this opinion indicated, with interest on such value from the time the same was cut to the date of the order; and, when so ascer-

tained, that an order be entered requiring the *Whortons* to pay the amount to the said *Webster*, with taxable costs, not exceeding the amount then due on *Webster's* mortgage, less the surplus paid into court on the Scott mortgage sale, within a time to be fixed in said order; and that, in default of such payment, the said mortgaged premises be sold for the payment of such sum, with interest and costs of sale.