NELSON and another, Respondents, vs. CHURCHILL, Appellant.

*February 5—February 24, 1903.*

(1–3) *Waste: Removal of timber: Measure of damages: Evidence.*
(4) *Tax titles: Offer to pay tax or to redeem.*

1. The measure of damages for waste by removing timber from land is the diminished value of the land, not the value of the timber in its manufactured state.
2. To show the diminished value of land by reason of the removal of timber, evidence of the market value of the manufactured products of such timber is admissible in connection with evidence as to the reasonable cost of manufacturing and marketing such products.
3. The evidence in this case, as to the value of timber removed from land which was of no value except for the timber, is *held* to sustain a verdict assessing damages for waste at $560.
4. If a person offers to pay to the proper officer the tax upon certain land for a particular year, or to redeem the land from a tax sale for such tax, and the officer informs him that there is no tax to be paid or tax sale to redeem from, and he in good faith relies thereon, a subsequent tax deed based on such tax will not pass title.

APPEAL from a judgment of the circuit court for Waupaca county: CHAS. M. WEBB, Circuit Judge. *Affirmed.*

Action of ejectment. The complaint is in the usual form. It contained a count for special damages for waste. Defendant pleaded title under a tax deed. On the trial it was in effect stipulated that plaintiffs were entitled to recover if the tax deed under which defendant justified was not valid. The deed was fair on its face. The only defense was that the land was, in legal effect, redeemed from the tax upon which the deed was based before it was issued. Plaintiffs produced evidence tending to show that they offered to pay such tax to the county treasurer of the proper county before the tax sale and were by him informed that there was no tax against the land for the year in question. There was also evidence tending to show that plaintiffs, within the time allowed by law, applied to the county clerk of the proper county to redeem the land from the tax sale thereof for the tax of the year in question, if there was any such sale, and was informed that there was none. The evidence further tended to show that plaintiffs in good faith relied upon the circumstances mentioned, and were thereby prevented from paying the tax, and also from redeeming the land after the tax sale. There was evidence to the effect that defendant cut and removed all the timber from the land, basing his claim thereto upon the tax-deed title, and evidence tending to show the value of the standing timber before the same was cut. There was also evidence, under objection, as to the value of the products made from such timber.

The jury found for plaintiffs generally and assessed their damages for waste at $560. Judgment was thereafter ordered in their favor for the amount of the verdict with interest from the date thereof, less the amount defendant was entitled to under the statute on account of the tax-sale certificate upon which the tax deed was based, the cost of executing the tax deed and recording the same, the taxes paid by him subse-

quent to such tax sale, and interest upon all of such sums as provided by law. The amount of the judgment as to damages was $528.85.

For the appellant there was a brief by *Wheeler & Van Doren,* and oral argument by *F. F. Wheeler.*

For the respondents there was a brief by *H. J. Severson,* attorney, and *McFarland, Hanna & Murat,* of counsel, and oral argument by *C. D. McFarland.*

MARSHALL, J. Complaint is made because the court permitted evidence of the market value of products made from the standing timber. In support thereof it is said the measure of damages for waste by removing the timber in an action like this is the diminished value of the land by such removal, not the value of the timber in its manufactured state. True, —and the court so ruled. Respondents' evidence of the value of the manufactured products was produced merely as a means, in connection with evidence respecting the reasonable cost of converting the timber into such products and delivering the same upon the market, of showing the value of the element entering into such products represented by the standing timber before it was disturbed, and of thus showing the injury to the inheritance by the partial destruction thereof resulting from cutting and removing the timber. The evidence was competent for that purpose. We do not understand that counsel really contends to the contrary. His complaint seems to be based upon the idea that the court did not confine the plaintiff to the proper measure of damages. That certainly is wrong. The record clearly shows that the evidence complained of was offered solely for the purpose of showing the diminished value of the land by the removal of the timber, and that the court, in admitting it, limited the effect thereof accordingly. It cannot be claimed that proof of the value of the standing timber in an action for waste caused by cutting timber from land is not a legitimate way of establishing the

recoverable loss, which is the diminution in the value of the land. The court passed upon that in *Whorton v. Webster,* 56 Wis. 356, 14 N. W. 280. Waste in such cases is commonly proved in that way. Respondents were by no means limited to the method, commonly used, of proving the value of the standing timber by witnesses competent to give opinion evidence as to the ultimate fact to be determined.

Counsel suggests doubt as to whether the evidence is sufficient to defeat the tax deed upon the ground that the plaintiff failed to pay the taxes or redeem the land, relying upon assurances by the officers with whom he is required to deal in the matter to correctly inform him as to whether there was any tax against the land to be paid or tax sale to be redeemed from. Counsel does not suggest any infirmity in the evidence, but invites us to go through the record and compare it with the decisions of this court on the subject, citing *Gould v. Sullivan,* 84 Wis. 659, 54 N. W. 1013; *Bray & Choate L. Co. v. Newman,* 92 Wis. 271, 65 N. W. 494; and *Edwards v. Upham,* 93 Wis. 455, 67 N. W. 728. We are unable to discover any ground for counsel's doubt. There is evidence, as indicated in the statement of facts, satisfying to the very letter this doctrine of those cases: If a person offers to pay to the proper officer the tax assessed upon a particular description of land for a particular year, or to redeem the land from a tax sale for such tax, and the officer informs him that there is no tax to be paid or tax sale to redeem from, and he in good faith relies thereon, a tax deed based on the tax which he endeavored to so pay, thereafter executed, will not pass title to the land to the grantee therein.

The further point is made that the verdict assessing plaintiffs' damages at $560 is not supported by the evidence. Here are the salient points of the evidence in substance: The land was of no value except for timber. That was substantially all cut and removed by or under the defendant. *Mr. Nelson,* one of plaintiffs, testified that he knew what the timber was

worth; that in his judgment it was $800; that he could not tell the amount of any particular kind of timber that was taken from the land, but that in his best judgment, from an examination of the timber, it was worth in the whole, and his damages by the removal thereof were, the amount stated; that he examined the land for the purpose of getting a general idea of the timber, but did not estimate it. Mr. Lestul said he examined the land in a general way for the purpose of determining the value of the timber; that he went over it with a view of seeing how much timber there was thereon; that he did not make an estimate of the timber, but took a general look at it; that he could not tell how much there was of any particular kind of timber, but that in the whole, as it stood when cut and removed by or under the defendant, it was worth $1,000. Mr. Olson testified that he hauled in one winter from the land, for the defendant, 548 telephone poles, 2,719 fence posts and some logs for shingle timber; that about three or four acres were cut over to obtain what he hauled; that other timber was cut from the land by defendant the same winter. There was some other evidence on plaintiffs' part, indicating the value of the products taken from the land and the cost of manufacturing and delivering the same upon the market. There was also evidence of the stumpage value of the timber. The value of the element representing the standing timber was put at from one to three cents for each post, twenty-five cents for each telephone pole, and $1 per thousand feet in the log for shingle timber. There was conflicting evidence as to the value of the timber as a whole, and the amount actually cut from the land; but the evidence relied upon by defendant was much weakened by this circumstance: The person who was called in his behalf and who said he superintended the cutting, testified that only about 300 poles and 3,000 posts were taken from the land, while the man who actually hauled the products made from the timber cut during a portion of one winter said that he hauled

548 poles and 2,719 posts, all taken from three to four acres. We have not in this attempted to give all the evidence, but to give what the jury had 'a right to believe, to show that the verdict has substantial support. The statement we have given seems to be all that is necessary to demonstrate that the judgment cannot be reversed for want of evidence justifying the jury in reaching the conclusion complained of.

*By the Court.*—The judgment is affirmed.