Swedowski and wife, Respondents, v. Westgor and another, Copartners, Appellants.

*May 3—June 6, 1961.*

For the appellants there was a brief by *Krueger & Fulmer* of Wausau, and oral argument by *William F. Krueger*.

For the respondents there was a brief by *Crooks & Crooks* of Wausau, and oral argument by *Patrick L. Crooks*.

FAIRCHILD, J. 1. *Wilfulness not essential to recovery of double damages under sec. 26.09, Stats. 1959.* Sec. 26.09, Stats. 1959, provides:

"CIVIL LIABILITY FOR UNLAWFUL CUTTING. In addition to the penalties provided in secs. 26.04 and 26.05, any person unlawfully cutting forest products shall be liable to the owner or to the county holding a tax certificate, or to the commissioners of public lands holding a land-contract cer-

tificate under the provisions of chapter 24, to the land on which the unlawful cutting was done, in a civil action, for double the amount of damages suffered. This section shall not apply to the cutting of timber for the emergency repair of a highway, fire lane, or bridge upon or adjacent to the land."

Plaintiffs claim, as the circuit court decided, that one who cuts without right or authority, cuts unlawfully for the purposes of this section. Defendants claim that this section does not apply unless wilful trespass be proved.

If the case were to be decided under sec. 26.09, Stats. 1947, defendants' position would be correct. Sec. 26.09 then provided in part:

"The state, the county, or the private owners upon whose lands any wilful trespass has been committed, may recover in a civil action double the amount of damages suffered." [1]

This court decided in 1945, "Wilful trespass is an essential element of plaintiff's claim to double damages. Sec. 26.09, Stats." [2] On motion for rehearing in the same case, it was said, at page 598:

"The statute, sec. 26.09, does not allow recovery of double damages for 'wilful cutting' but for 'wilful trespass.'"

At that time, sec. 331.18, Stats., applied to all actions to recover the possession or value of timber "wrongfully cut" upon the land of a plaintiff or to recover damages for such trespass. It provided for recovery of the highest market value of the timber in any place or in any form up to the time of trial, except that if defendant followed a prescribed procedure and established that the cutting was "by mistake," plaintiff could recover only the value at the time of cutting

---

[1] This section had its origin in ch. 264, Laws of 1905, appearing in the 1906 supplement as sec. 1494–60.

[2] *Boneck v. Herman* (1945), 247 Wis. 592, 597, 20 N. W. (2d) 664.

plus interest from the time of cutting plus 10 per cent upon the combined sum. This section had its origin in ch. 263, Laws of 1873. In revised form it appeared in the statutes of 1878 as sec. 4269. This changed the rule of *Single v. Schneider* (1872), 30 Wis. 570, to the effect that the usual measure of recovery is the value before the property was improved by defendant's labor and skill even if the property was taken knowingly and wilfully. In analyzing this section, this court has stated with respect to the word "wrongful" that, "as here used, it means any unlawful or unauthorized cutting of logs or timber upon the lands of another, or any act of this description which is a civil wrong, or without right." [3]

The 1949 legislature enacted ch. 252, Laws of 1949. This act repealed, among other sections, sec. 331.18, previously referred to, and secs. 343.511 [4] and 343.512.[5] It repealed and re-created among other sections, secs. 26.04, 26.05, and 26.09, and amended sec. 331.17.

Bill No. 292, S., which became ch. 252, Laws of 1949, contained the following note entitled "General Comments:"

"The trend in revision of the Wisconsin statutes has been to group legislation by subject matter. A good example is chapter 27, where matters pertaining to public parks are grouped, covering state, county, and municipal parks and related subject matter.

---

[3] *Webber v. Quaw* (1879), 46 Wis. 118, 121, 49 N. W. 830.

[4] This section was entitled "Larceny of timber and trees" and imposed the penalty provided elsewhere for larceny upon any person wilfully cutting and converting timber, or converting timber with knowledge that it had been so cut by his employees.

[5] This section was entitled "Criminal action; forest trespass" and imposed a fine of not less than $25, nor more than $1,000, or imprisonment for not less than fifteen days nor more than three years, or both, for unlawfully cutting or injuring timber on the lands of another, or unlawfully and wilfully injuring, destroying, or carrying away any of the products thereof.

"This bill is not concerned with cutting or mutilation of shade trees or ornamental planting but deals only with unlawful cutting of forest growth. Since this is a phase of forest protection, the subject is properly placed in chapter 26, which carries all of the provisions pertaining to forest-fire prevention and control. In fact, six sections dealing with the subject are now found in that chapter.

"The purpose of this draft is to codify legislation on unlawful cutting by revising, clarifying, and condensing the numerous provisions and grouping them in one chapter in proper sequence. The varying provisions for cutting on various classes of public land or private land are eliminated.

"Distinction between timber trespass and timber larceny is based on definition and not on intent. No new penalties are provided."

Sec. 26.04, Stats., as created by ch. 252, Laws of 1949, is entitled "Timber trespass" and provides as follows:

"Any person who unlawfully cuts or directs or contracts for the cutting of forest products on the lands of another, which is defined to include privately owned lands and those of any unit of government, and lands to which the state holds a land-contract certificate under the provisions of chapter 24, or lands to which any county holds a tax certificate, shall be punished as provided in section 26.15." [6]

Sec. 26.05, Stats., is now entitled "Timber theft" and provides:

"Any person who unlawfully cuts or directs or contracts for the cutting of forest products on the lands of another as defined in sec. 26.04 and who does not own or control adjoining land; or who, though owning adjoining land bearing merchantable forest products, cuts on an acreage substantially in excess of the adjoining land; or who, as part of an unlawful cutting operation, removes or destroys any survey

---

[6] The penalty prescribed in sec. 26.15 is less severe than formerly prescribed by sec. 343.512. It prescribes a fine of not less than $10, nor more than $50, and imprisonment for not less than ten, nor more than thirty days, or both.

monument or bearing tree, shall be punished as provided in sec. 943.20 for the theft of property of the same value." [7]

Ch. 252, Laws of 1949, also amended sec. 331.17, Stats. That section had provided that, "A tender may also be made in all cases of involuntary trespass before action is commenced; . . ." Ch. 252 amended this language to read: "A tender may also be made in all cases of involuntary trespass, *except timber trespass as defined in sec. 26.04,* before action is commenced; . . ." (Italics in original text.)

Secs. 26.04, 26.05, and 26.09, Stats. 1959, all provide for the consequences of *unlawfully cutting* forest products. The present problem is to determine whether *unlawful cutting* includes an element of wilfulness. In the absence of the history of these statutes, defendants' contention that wilfulness is an essential element might well be adopted. "In most jurisdictions, although the statute contains no express provision, the courts have recognized that the cutting or carrying away must contain an element of wilfulness to render the trespasser liable for increased damages or the prescribed penalty." [8]

The statutory history referred to, however, persuades us that the legislature in 1949 intended to deal with unauthorized cutting without regard to intent or wilfulness. Former sec. 331.18, Stats., would have applied in the situation now before us and would have imposed its liberal rule of damages without proof of intent, and its more-conservative rule if defendant established mistake. Former sec. 26.09, on the other hand, would have applied in the present situation only if wilful trespass could have been established. The fact that both were repealed and new sec. 26.09 created in different

---

[7] The penalties prescribed in sec. 943.20 (3), Stats. 1959, are graded according to the value of the property involved and are very much greater than the penalties provided in sec. 26.15.

[8] 34 Am. Jur., Logs and Timber, p. 580, 581, sec. 138. See also *Cohn v. Neeves* (1876), 40 Wis. 393, 399.

language indicates that the new section is to cover the field and that intent or wilfulness would be immaterial under the new section. The amendment to sec. 331.17 also suggests that timber trespass can occur without intent or wilfulness.

We conclude, therefore, that the circuit court was correct in awarding double damages without requiring proof of intent or wilful trespass.

2. *If Low was an independent contractor, did that constitute a defense?* Defendants claim that Low was an independent contractor; that they had no control over the details of his work, and that they were not liable for his torts. The circuit court found that Low and his agents were employees of defendants. Defendants challenge these findings.

The record contains two contracts between defendants and Low. One was a general logging contract, renewable from year to year, except that it provided that Low would be defendants' principal logger "as long as the term of this contract and so long as his work continues to be satisfactory and done in the manner in which it has been [done] previously." It also provided: "That such logs shall be cut in accordance with the instructions of [defendants]. . . ." The other contract specifically covered the logging of plaintiffs' land, and incorporated the general contract. There was testimony that Westgor had given an instruction that Low should cut the trees closer to the ground.

Although the contracts provided that Low must carry his own workmen's compensation insurance, withhold social security and income tax from wages, build roads necessary to remove the timber, and furnish certain equipment, that Low would be paid at a specified sum per thousand feet, and that he should cut timber of the size specified in the timber deed of plaintiffs, defendants retained some right to control the cutting operation.

The principal point of distinction between the status of a servant and independent contractor " 'was the degree of

retention by the employer or principal of the right to control the manner in which the details of the work were to be done.' " [9]

We conclude that the evidence sufficiently supports the finding that Low was an agent at least for the selection of the trees.

In any event, we are not concerned with a claim that defendants are liable for Low's negligence or other torts incidental to the performance of the work except his failure to determine properly which trees were to be cut. The gist of the cause of action is the cutting of timber which was unauthorized, and the defendants are in a position of having ratified Low's act by accepting the benefit of it. If the cutting was unlawful, then the defendants received timber for which they had not paid. This theory was applied in holding a defendant liable for enhanced damages under former sec. 4269, R. S. 1878, where the cutting was done by a firm which defendant claimed was an independent contractor. [10]

3. *Were the findings on damages sustained by the evidence?* Plaintiffs alleged in their complaint that 59 undersized trees were cut. Defendants in their answer denied that they had cut any undersized trees, alleging that they were not responsible for Low's mistakes as an independent contractor; that Low did cut several trees, as to the size of which there was doubt, contrary to instructions, and that if plaintiffs were damaged the damage did not exceed $150.

At the opening of the trial, the parties stipulated that 42 undersized trees had been cut. Plaintiff rested after offering proof as to damages. He testified that the value of his land after the 42 trees were cut was $1,000, and that its value if

[9] *Harris v. Richland Motors* (1959), 7 Wis. (2d) 472, 476, 96 N. W. (2d) 840.

[10] *Underwood v. Paine Lumber Co.* (1891), 79 Wis. 592, 594, 595, 48 N. W. 673; *Lee v. Lord* (1890), 76 Wis. 582, 45 N. W. 601.

they had not been cut would have been $1,400, or a difference of $400.[11]

Defendants then offered the timber deed and contracts with Low and testimony with respect to damages. Their witnesses testified to the value of the land after cutting, and its value if the 42 undersized trees had not been cut. The difference as shown by their testimony ranged from $50 to $100. Defendants then offered testimony that some of the undersized trees were necessarily cut in order to remove the trees of the size specified in the timber deed. As previously stated, the deed authorized defendants to cut such other timber as may be required in the cutting and removal of the timber sold to them. This testimony was received without objection. Low testified that, "Oh, 12 or 14" were cut for skidways and roads, and there were one or two that had to be cut or they would have been smashed when larger trees fell. Low's helper testified there were 12 or more undersized trees cut in order to make skid roads and that there "could have been three or five" cut because they were in the way of other falling trees. On rebuttal, Mr. Swedowski testified that, "there could be a few of them [in skidways] but not very many."

Judge BOILEAU considered the testimony too vague to be entitled to much consideration, and made a finding that 35 of the 42 undersized trees were unlawfully cut. Perhaps it

[11] An owner's opinion as to the value of personal property is competent, although its weight is affected by his knowledge of value. *Farley v. Spring Garden Ins. Co.* (1912), 148 Wis. 622, 627, 134 N. W. 1054. See *Essock v. Mawhinney* (1958), 3 Wis. (2d) 258, 268, 88 N. W. (2d) 659; 20 Am. Jur., Evidence, p. 751, sec. 892; Anno. 37 A.L.R. (2d) 967, 974.

A witness having but a general knowledge of the particular situation and surrounding conditions may be permitted to testify as to the value of and damages to real estate. *In re Opening of Oklahoma Avenue* (1922), 179 Wis. 136, 138, 190 N. W. 1001; Anno. 159 A.L.R. 7.

could be said that justification of cutting undersized trees out of necessity was of the nature of an affirmative defense and the burden was on the defendants to prove or at least to produce evidence on that issue. Or perhaps they had such burden because the facts as to the necessity of cutting them were within their knowledge.[12] In any event, we think that since this issue did not appear in the pleadings, and was first raised by defendants upon the trial, the court reasonably found as it did upon the indefinite testimony produced.

The circuit court was of the opinion that the $400 amount of damage shown by Swedowski's testimony was too high, but felt that the amount of damages which the testimony of defendants' witnesses tended to show was too low. Other testimony of plaintiff suggested a value of about $5 per tree. It appeared that the expert witnesses arrived at a value of about $2 to $2.50 per tree on the basis of the number of board feet which each tree might yield. The court was of the opinion that this did not reflect fair market value because these trees were immature and had greater value because of the expectation of future growth. As the court commented, the determination of the fair amount of damages was difficult. All things considered, the finding of $175 is not contrary to the great weight and clear preponderance of the evidence.

*By the Court.*—Judgment affirmed.

[12] See 9 Wigmore, Evidence (3d ed.), p. 274, sec. 2486.