Martin TYDRICH, Plaintiff-Appellant,

v.

Dennis BOMKAMP, Wisconsin Rivervalley Hardwoods,
Heritage Mutual Insurance Company, Defendants-
Respondents.

Court of Appeals

*No. 96–2086. Submitted on briefs October 9, 1996.—Decided
December 27, 1996.*

(Also reported in 558 N.W.2d 692.)

For the plaintiff-appellant the cause was submitted on the briefs of *John D. Brown* of *John D. Brown Law Office* of Richland Center.

For the defendants-respondents the cause was submitted on the brief of *Roger J. Mueller* of *Hamilton & Mueller, S.C.* of Dodgeville.

Before Vergeront, Roggensack and Deininger, JJ.

DEININGER, J. Martin Tydrich appeals from a judgment awarding him damages under § 26.09, STATS.,[1] for the unlawful cutting of thirty-five large

[1] Section 26.09, STATS., provides as follows:

**26.09 Civil liability for unlawful cutting, removal and transport.** In addition to the other penalties and costs, any person unlawfully cutting, removing or transporting raw forest products is liable to the owner or to the county holding a tax certificate, or to the board of commissioners of public lands holding a land contract certificate under ch. 24, to the land on which the unlawful cutting was done or from which it was removed, in a civil action, for double

maple trees on his farm. He claims the trial court erred in computing damages: (1) by deducting the cost of cutting the trees from the market value of the timber; and (2) by allowing an offset against double damages for the net amount Tydrich received upon sale of the timber. We conclude the damages awarded are not improper under § 26.09 and thus affirm the judgment.

## BACKGROUND

There are no facts in dispute. Dennis Bomkamp was cutting trees on a farm adjoining Tydrich's and negligently cut thirty-five trees on the Tydrich farm. He was acting under the direction of Wisconsin Rivervalley Hardwoods, Inc., which paid Bomkamp $1,180 for cutting and skidding Tydrich's trees. Tydrich discovered the downed logs before they were removed from his land. He sold them to a third party for $7,650. The trial court found the cost to clean up brush from the cut trees on Tydrich's land was $600.

The trial court computed Tydrich's damages as follows: the market value of the logs ($7,650) was reduced by the cost of cutting the trees ($1,180) and increased by the land clean up cost ($600); that amount ($7,070) was doubled per § 26.09, STATS., to arrive at $14,140. The court then applied an offset of $6,724.35 to account for the net proceeds Tydrich received when he sold the logs ($7,650 less $925.65 for income taxes paid on the proceeds). A judgment in favor of Tydrich for $7,415.65, plus allowable costs, was entered against Bomkamp, Wisconsin Rivervalley Hardwoods, Inc., and Heritage Mutual Insurance Company (Defendants).

---

the amount of damages suffered. This section does not apply to the cutting, removal and transporting of timber for the emergency repair of a highway, fire lane or bridge upon or adjacent to the land.

## ANALYSIS

Construction of a statute, or its application to a particular set of facts is a question of law, which we decide independently, owing no deference to the trial court's determination. *Minuteman, Inc. v. Alexander*, 147 Wis. 2d 842, 853, 434 N.W.2d 773, 778 (1989).

### a. *"Stumpage" Versus Market Value*

Tydrich argues that the plain language of § 26.09, STATS., i.e., "the amount of damages suffered," requires that damages be based upon the market value of the logs. He further argues that even if the statute is ambiguous, the legislative history of the statute supports his interpretation. Tydrich thus claims that the trial court erred by deducting tree cutting costs from the market value of the timber, thereby awarding him only "stumpage" value for the trees that were cut by Bomkamp.[2] He maintains that this approach to computing damages improperly rewards wrongdoers by compensating them for the unlawful cutting, and it is therefore inconsistent with the deterrent purpose of § 26.09. He points to cases from Washington which reject "stumpage" value and embrace market value as the measure of damages under a similar statute.[3]

[2] The Washington Court of Appeals has defined stumpage as "the value of timber as it stands before it is cut, or put another way, the amount a purchaser would pay for standing timber to be cut and removed." *Pearce v. G. R. Kirk Co.*, 589 P.2d 302, 305 (Wash. App.), *aff'd*, 602 P.2d 357 (Wash. 1979). The rationale behind "stumpage" value for evaluating damages is that logs which have been cut, trimmed, and stacked for removal to a mill are worth more than the trees standing because of the value added by the labor in preparing the logs for market.

[3] *See, e.g., Pearce*, 589 P.2d at 306:

Defendants assert that the plain language of the statute supports the trial court's determination of damages based upon stumpage value. They argue that "the true value of plaintiff's loss is the difference between the value of plaintiff's land before the cutting and immediately after the 35 trees were cut."[4] Diminished land value may properly be equated with the standing value of the trees that have been cut. *Nelson v. Churchill*, 117 Wis. 10, 12-13, 93 N.W. 799, 799 (1903). Thus, defendants maintain that the trial court did not err by determining damages based upon the standing value of the trees. Defendants do not object to the $600 awarded for "clean up costs" as a part of Tydrich's damages.

██

The parties' disagreement as to the meaning of § 26.09, STATS., does not render the statute ambiguous. *See National Amusement Co. v. DOR*, 41 Wis. 2d 261, 267, 163 N.W.2d 625, 628 (1969). A statute may be said to be ambiguous when it is capable of being understood by reasonably well-informed persons in either of two senses. *Id.* Whether a statute is ambiguous is a question of law. *Boltz v. Boltz*, 133 Wis. 2d 278, 284,

---

Under [Washington's statute], we hold that for a plaintiff who intended to market trees personally and realize a retail profit, the proper measure of damages to be trebled is the proven market value of those trees. That value is not to be reduced or mitigated by a wrongdoer under a punitive statute such as this, bearing in mind that "(t)he statutory purpose is to protect the right of the owner to use or preserve his trees as he sees fit, and not force compensation upon him when undamaged, growing trees were what he would have possessed but for the willful intrusion of the trespasser."

(Quoted source omitted.)

[4] The only evidence offered on the change in land value was a comparison showing that the assessed value of Tydrich's land actually increased after the cutting.

395 N.W.2d 605, 607 (Ct. App. 1986). We conclude that § 26.09 is ambiguous because it does not specify the method for computing "the amount of damages suffered," and either market value of the logs or stumpage value are reasonable possibilities. When a statute is ambiguous, we may construe it in light of its history, context, subject matter and scope to determine the legislature's intent. *Kluth v. General Cas. Co.*, 178 Wis. 2d 808, 815, 505 N.W.2d 442, 445 (Ct. App. 1993).

The legislative history of § 26.09, STATS., is discussed at length in *Swedowski v. Westgor*, 14 Wis. 2d 47, 109 N.W.2d 549 (1961), and in George Radler, Recent Decisions, *Damages—Recovery of Double Damages for Conversion of Timber*, 39 MARQ. L. REV. 64 (1955). Prior to 1873, Wisconsin courts were awarding victims of unlawful timber cutting only stumpage value, regardless of whether the cutting was intentional or by mistake. In response, because it wished to enhance economic sanctions against those who commit "timber trespass," the legislature enacted the following provision as Laws of 1873, ch. 263, § 1, later codified as § 331.18, STATS.:

> In all actions to recover the possession or value of logs, timber or lumber wrongfully cut . . . *the highest market value of such logs,* timber or lumber, in whatsoever place, shape or condition, manufactured or unmanufactured . . . shall be found or awarded to the plaintiff . . . .

(Emphasis added.)

Following enactment of § 331.18, STATS., the supreme court held that the legislative directive for "highest market value" damages applied in all cases of "unlawful and unauthorized cutting of logs," whether intentional or inadvertent. *Webber v. Quaw*, 46 Wis.

637

118, 122-23, 49 N.W. 830, 831 (1879). In 1905, the legislature enacted another provision, a predecessor to the present § 26.09, STATS., which authorized double damages for unlawful timber cutting.[5] The double damages provision applied only if the unlawful cutting constituted "wilful trespass." *Boneck v. Herman*, 247 Wis. 592, 596-97, 20 N.W.2d 664, 667 (1945); *see also Swedowski*, 14 Wis. 2d at 49, 109 N.W.2d at 551.

Then, in 1949, the legislature extensively revised the statutes in this area, repealing § 331.18, STATS., and enacting the present § 26.09, STATS.[6] Under the revised § 26.09, double damages can be sought from "any person unlawfully cutting . . . raw forest products." There is no longer a reference to "wilful trespass." The supreme court in *Swedowski* held that the 1949 revisions, and particularly the revised § 26.09, were intended "to cover the field," such that the doubling of damages is now intended by the legislature to apply to all unauthorized cutting, not just that which is "wilful." *Swedowski*, 14 Wis. 2d at 52-53, 109 N.W.2d at 553.

From this history, Tydrich argues that the former "highest market value" measure of damages from the repealed § 331.18, STATS., must be applied to "damages suffered" in § 26.09, STATS. We must presume, however, that the 1949 Legislature was aware of the case law which predated the enactment of § 331.18, STATS. *See Reiter v. Dyken*, 95 Wis. 2d 461, 471-72, 290 N.W.2d 510, 515-16 (1980). By repealing the "highest market value" provision and failing to specify any other measure of damages, we conclude that the legislature intended to have damages computed under § 26.09, STATS., in accordance with the common law of damages

---

[5] Laws of 1905, ch. 264, §§ 19 & 20.

[6] Laws of 1949, ch. 252, § 3.

for unlawful tree cutting as it had developed prior to enactment of the repealed provision. Had the legislature intended to continue a "highest market value" determination of damages, or to establish some measure other than that developed by case law, it would have specifically so provided, especially given the history described above.

Support for this interpretation of § 26.09, STATS., is found in the *Swedowski* case. There, as here, a direct evaluation of the decrease in real estate value due to tree removal was apparently not feasible. The supreme court affirmed a double damage award under § 26.09 based upon the standing value of the trees that had been cut.[7] We note also the supreme court's emphasis in *Swedowski* on the legislature's failure to carry over the "wilful trespass" language to the revised § 26.09 in concluding that the statute now covers negligent cutting. *See Swedowski*, 14 Wis. 2d at 52-53, 109 N.W.2d at 553. We similarly conclude that the repeal of "highest market value" was purposeful and indicative of legislative intent to change the method by which damages are determined for unlawful cutting of forest products.

■■

Thus, we conclude the trial court's determination that the "amount of damages suffered" under § 26.09, STATS., is the market value of the logs reduced by the

---

[7] In *Swedowski*, the standing value of the trees was actually higher than their value cut. These were young trees worth approximately $2.00 to $2.50 apiece after cutting, but the trial court awarded a higher figure, $5.00 per tree, on the rationale that the trees had future growth potential, and thus were worth more standing. *Swedowski v. Westgor*, 14 Wis. 2d 47, 56, 109 N.W.2d 549, 555 (1961).

costs of cutting, is consistent with the legislative history, context, subject matter and scope of § 26.09.[8]

### b. Offset for Log Sale Proceeds

Tydrich also argues that the trial court improperly offset the net sale proceeds Tydrich received for the logs against the doubled damages. He notes correctly that since he was the owner of the logs, he was entitled to repossess them under § 26.06, STATS., (sheriff may seize and hold for owner any forest products unlawfully severed or removed). Therefore, since § 26.09 provides for the award of double damages "[i]n addition to the other penalties and costs," Tydrich claims the legislature intended that there be no offset to double damages when a landowner gains possession of wrongfully cut logs and sells them. We disagree.

Tydrich's argument is premised on a strained reading of these sections. In this regard, we conclude § 26.09, STATS., is not ambiguous. The plain language of the statute requires that a plaintiff be awarded "double the amount of damages suffered." The trial court correctly noted that not offsetting the double damages by Tydrich's sale proceeds would result in him receiving treble damages. The additional "other penalties and costs" for which a wrongful timber cutter may be liable are civil forfeitures and criminal

---

[8] Further support for this interpretation is found in THE LAW OF DAMAGES IN WISCONSIN, § 18.16 (State Bar of Wisconsin CLE Books ed., 1994). Preceding a paragraph that describes the availability of double damages under § 26.09, STATS., the text states that "[i]n most of the reported cases" diminished land value after timber has been destroyed "is established by proof of the fair market value of the standing timber (sometimes referred to as stumpage value)."

penalties. *See* §§ 26.05, 26.06, 943.20 and 943.34, STATS.

█

As we have discussed, the "amount of damages suffered" by Tydrich is the value of the standing trees that were cut. He is entitled to recover twice that value. To read the statute as Tydrich urges has the effect of rewarding timber trespassers for stealth and speed. Had the defendants been quicker or more secretive in cutting and removing the trees, *they* would have received the proceeds from selling the logs and would have been liable to Tydrich for full double damages of $14,140. Since Tydrich directly received the sale proceeds for the logs, however, he had already recovered a portion of his entitlement under § 26.09, STATS. The trial court did not err by awarding Tydrich only the balance of his statutory damages.

*By the Court.*—Judgment affirmed.