LUMBERMEN'S NATIONAL BANK OF MENOMINEE, MICHIGAN, Respondent, vs. CORRIGAN and others, Respondents, and others, Appellants.

*February 6—March 5, 1918.*

*Action: Connected conflicting claims: Settlement in one suit: Impleading new parties: Demurrer to cross-complaint: Mortgages: Foreclosure: Insurable interest of mortgagor after sale of premises: Loss payable to mortgagee: Mistake in policy: Reformation: Informality in judgment: Assignment of moneys payable under policy: Costs: Discretion.*

1. After land was sold to one who assumed a mortgage thereon both the mortgagor and the purchaser procured insurance upon the buildings, one of which was afterwards damaged by fire. Action to foreclose the mortgage having been brought, the mortgagor claimed that by reason of certain facts the insurance companies were legally liable to pay the insurance moneys directly to the mortgagee and thus *pro tanto* discharge the mortgage before recourse was had to the property itself. The companies, though not contesting the validity of the policies, denied that they were liable to the mortgagee. *Held*, that such conflicting claims were so closely connected with the subject of the foreclosure action that they should be litigated and determined therein; and the companies were properly impleaded.

2. Where a new defendant is brought in under sec. 2656a, Stats., to answer a cross-complaint, a demurrer by him should, in ordinary cases at least, be directed to the cross-complaint, not to the original complaint, although he may answer the latter if he chooses.

3. A mortgagor who has sold the premises but remains liable for the mortgage debt has an insurable interest and, to protect himself, may take out a valid insurance policy in the name of the owner, with loss, if any, payable to the mortgagee, where all the facts are known to the insurer; and the mortgagee may enforce such policy in case of a loss.

4. Where the trial court found that both parties to an insurance policy intended that the loss should be payable to a mortgagee, but that by a mutual mistake the policy did not express such intent, a judgment based on the theory of a reformation of the policy should not be disturbed merely because such reformation was not formally adjudged.

5. Where the purchaser of mortgaged premises, who had assumed

the mortgage, procured insurance in his own name and, after a loss, assigned all moneys to become due on the policy to the mortgagor to be applied on the mortgage, providing, however, that any excess should be paid to said purchaser, and there was no excess, such assignment, whether it was in trust or otherwise, and the rights of all parties under the policy could properly be enforced in an action to foreclose the mortgage, in which all parties interested were before the court.

6. Where, in a foreclosure action, the mortgagor impleaded certain insurance companies and obtained judgment requiring them to pay the amount of a loss into court to be applied upon the mortgage, the awarding of costs to the mortgagor against said companies was not an abuse of discretion.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Affirmed.*

Mortgage foreclosure. The original complaint was in the usual form and the action was originally brought against the mortgagor and his grantee alone. By order of the court the insurance companies who are appellants were made defendants. There is no bill of exceptions. The facts are that the plaintiff owns a note of $2,400 given by the defendant *John E. Corrigan* March 16, 1911, to one Harmon, secured by mortgage (being the mortgage now under foreclosure) upon certain lots in Neenah. On the same day that the mortgage was given *Corrigan* sold the mortgaged premises to the defendant *Selin,* who assumed and agreed to pay the note and mortgage, and thereafter made three semi-annual payments of interest thereon. July 27, 1912, the defendant *Corrigan* procured at his own expense a policy of insurance for $2,400 from the *North River Insurance Company* covering the buildings on the mortgaged premises in the name of *Selin,* the owner, with the following rider attached: "It is understood that the above property is covered by a real-estate mortgage in favor of Mr. Harmon of Menominee." The insurance company knew the condition of the title and that *Corrigan* was not the owner but had an insurable interest therein as surety for the payment of the note, and it was the intention and real agreement of

both parties to make the loss payable to the mortgagee, the language of the aforesaid rider being used with the mistaken idea that it accomplished that purpose. The policy contained a clause permitting other insurance. Five days later *Selin* procured a policy of insurance in the *North British Company* on the residence situated on the premises in the sum of $3,000, said policy also permitting other insurance. On December 3, 1912, said residence was damaged by fire to the extent of $2,500 and proofs of loss were made on both policies in due time. December 28, 1912, *Selin* assigned in writing all moneys to become due under the *North British* policy, not exceeding $2,400, to *Corrigan,* the same to be applied on the mortgage, and the excess if any to be paid to *Selin.* This action was commenced March 23, 1914. Thereafter the defendant *Corrigan,* upon his sworn answer stating the facts, moved that the appellant insurance companies be made parties, and the court ordered that they be brought in as defendants, that the plaintiff serve an amended complaint upon them, and that the defendant *Corrigan* serve his answer and cross-complaint upon all the other parties to the action. The plaintiff amended its complaint by inserting an allegation that the defendant insurance companies were foreign fire insurance companies authorized to do business in Wisconsin and were made parties to the action pursuant to the order of court aforesaid. Thereupon *Corrigan* filed his cross-complaint alleging the aforesaid facts as to the issuance of the insurance policies, the fire, and the making of proofs thereof, and prayed that the insurance companies be required to pay into court the amounts due from them on their policies, and for such other relief as was equitable. The insurance companies filed general demurrers to the plaintiff's complaint and to *Corrigan's* cross-complaint, which were overruled. The appellant companies took no further steps in the case and the action was tried by the court, which found the facts substantially as hereinbefore stated, and

adjudged that the insurance companies pay into court their proportionate shares of the loss, amounting in the aggregate to $2,500, that the same be applied upon the note and mortgage, and that the plaintiff have the usual judgment of foreclosure and sale for the balance; also that *Corrigan* recover his costs against the insurance companies. From judgment entered in accordance with the findings the insurance companies appeal.

For the appellants there was a brief by *Gill & Barry* of Milwaukee, and oral argument by *Thomas H. Gill.*

For the respondent *Lumbermen's National Bank* there was a brief by *Sheridan, Evans & Merrill* of Green Bay, and oral argument by *W. L. Evans.*

For the respondent *Corrigan* there was a brief by *Paul D. Carpenter,* attorney, and *Charles W. Stark, Jr.,* of counsel, both of Milwaukee, and oral argument by *Mr. Carpenter.*

WINSLOW, C. J.   It is not deemed necessary to take up the contentions urged by the appellants in detail; they will be sufficiently answered by the statement of some general propositions.

We regard this as a typical case where justice demands the settling in one action of a number of conflicting claims, all very closely connected.   The situation was this: The original mortgagor (*Corrigan*) had deeded the mortgaged premises to *Selin,* who had agreed to pay the mortgage; thus, as between *Corrigan* and *Selin, Selin* became the principal debtor and *Corrigan* a surety.   Both *Corrigan* and *Selin* insured the building on the premises, and the building thereafter burned.   *Selin* having defaulted, foreclosure is begun. *Corrigan* comes in and claims that by reason of certain facts the insurance companies are legally liable to pay their respective losses directly to the mortgagee, and thus *pro tanto* discharge the mortgage before recourse is had to the property itself.   The insurance companies contest this claim and in-

sist that they are not liable to the mortgagee, though not contesting the validity of the policies.    It is manifest that these claims are all closely connected with the subject of the foreclosure action, and that subject is (under the rule laid down in *McArthur v. Moffet*, 143 Wis. 564, 128 N. W. 445) the primary right of the mortgagee to enforce his lien upon the mortgaged property together with the property itself.    That these parties should be compelled to settle their rights and liabilities in several separate actions, thus duplicating expense and dragging out the controversy·through a series of years, is not and never has been the idea of our code of procedure but rather the contrary.    As said in *Hemenway v. Beecher*, 139 Wis. 399, 121 N. W. 150, speaking of secs. 2610 and 2656a, Stats., "The idea in both sections is to enable the court to grasp all the issues germane to the main ·controversy, whether arising between the plaintiff and the defendant, or between defendants, or between a defendant and an outside party, and dispose of them in one and the same action, and thus avoid circuity of action and multiplicity of suits."    It has been and still is the aim of this court to carry out this beneficent idea and thus realize as fully as possible the constitutional guaranty of justice administered "promptly and without delay."

This brings us to a consideration of the merits.    When a third party is brought in and made a defendant under the provisions of sec. 2656a to answer to a cross-complaint, his concern is with the cross-complaint rather than with the original complaint.    No reason is perceived why it was necessary in the present case that the original complaint should have been amended at all.    In many cases the plaintiff may know nothing of the facts which the defendant who makes the cross-complaint relies on, and in fact the plaintiff's interest may be rather with the interpleaded person than with cross-complainant.    It is evident that, in all ordinary cases at least, the pleading to which the new party should answer or

demur is the cross-complaint. Doubtless he may answer the original complaint if he chooses, but any demurrer on his part to the original complaint is out of place; it should be directed to the cross-complaint, for that is the pleading which asks relief as against him. We think the cross-complaint in the present case stated a good cause of action against the insurance companies, and, the findings of the court being in accordance with its allegations, it follows that the judgment must be affirmed.

It is clear that *Corrigan* had an insurable interest resulting from the fact that he was liable for the payment of the mortgage debt. *Williams v. Roger Williams Ins. Co.* 107 Mass. 377. Having such insurable interest, we know of no reason either in law or morals why he could not take out a valid insurance policy on the premises in the name of the owner, with a provision that the loss, if any, should be payable to the mortgagee, the facts all being known to the insurance company. True, the policy taken out by *Corrigan* was not on its face payable to the mortgagee, but the court found that such was the intention of the parties and that the rider was placed in the policy under the mistaken idea on both sides that it expressed that intent; and, while the judgment did not in terms reform the policy, all the facts were found which justified and called for reformation, and the judgment can only be sustained on the theory of reformation. Under such circumstances it must be considered that the omission to enter a formal judgment of reformation should not be allowed to prejudice the result here. The sum and substance of the matter is, in relation to the *North River* policy taken out by *Corrigan,* that a man having an insurable interest in mortgaged property took out and paid for a policy of insurance thereon and presented it to the mortgagee, and the mortgagee accepted it and is enforcing it. The insurance company thereby made a valid contract with *Corrigan* not merely for *Corrigan's* benefit, but for the bene-

fit of the mortgagee, and we know of no reason why the mortgagee should not enforce it as is being done here. *Tweeddale v. Tweeddale,* 116 Wis. 517, 93 N. W. 440.

As to the *North British* policy taken out and paid for by the owner, *Selin,* in his own name, all moneys to become due thereon (not exceeding $2,400) were assigned by *Selin* to *Corrigan* after the fire to be applied on the mortgage, the excess if any to be paid to *Selin.* There was no excess, as we have seen. Why the amount due on this policy should not be applied as directed by the assignment to *Corrigan* does not appear. It is said that the assignment to *Corrigan* is only an assignment in trust and gives him no right of action, but makes him merely an appointee, and that the property in the policy still remains in *Selin.*

If this be admitted, still we think the judgment right; both *Corrigan* and *Selin* are parties to this action and between them they represent the full ownership of the policy. *Selin* makes no claim to control the policy, but is content to stand by his assignment: he is bound by the results of the action. We see no reason why the court should not deal with and enforce the policy as the rights of the parties appear to be, all the parties interested being before the court. There was no abuse of discretion in awarding costs in favor of *Corrigan* against the appellants.

*By the Court.*—Judgment affirmed.