Gorski, Appellant, v. City of Milwaukee, Respondent.

*March 30—April 28, 1964.*

518

For the appellant there was a brief by *Phillips, Hoffman & Phillips* of Milwaukee, and oral argument by *N. Paley Phillips*.

For the respondent there was a brief by *John J. Fleming*, city attorney, and *Ewald L. Moerke, Jr.*, and *Harvey G. Odenbrett*, assistant city attorneys, and oral argument by *Mr. Odenbrett*.

HALLOWS, J. The Kline Law under which the real estate was taken, like ch. 32, Stats., did not provide for damages upon a taking in addition to compensation for the fair market value of the real estate. By ch. 486, sec. 18, Laws of 1961, specific items of damage were made compensable in eminent-domain proceedings such as (1) realignment of personal property, (2) removal of personal property to another site, (3) refinancing costs, (4) net rental loss, and (5) expense of plans rendered unusable. Sec. 32.19, Stats. The procedure for the collection of these items of damage is set forth in sec. 32.20. However, ch. 32 does not apply to proceedings under the Kline Law and the common council of the city of Milwaukee in 1961, to provide for the pay-

ment of claims for damages, adopted resolutions which were patterned after but not identical with ch. 32. By resolution File Numbers 56–3637-s and 60–1277-c, the city of Milwaukee recognized claims to a limited extent over and above the value of land taken by condemnation for (1) cost of abstract extension or title insurance policy, (2) limited moving expenses, (3) certain finance costs, (4) the cost of realignment of personal property, (5) rental loss, and (6) expenses incurred for unused plans and specifications.

Realignment of personal property was defined as, "The cost of realigning personal property on the same site in partial takings or where realignment is required by elimination or restriction of existing used right of access." Rental loss was restricted to the amount of such loss which exceeded the normal experience when proved to be caused by the public land-acquisition project. The resolution set up a committee on claims and damages in condemnation and a procedure for an appeal from that committee to the common council and for one-year statute of limitations. The resolution also provided that nothing therein should be deemed to prohibit any claimant from seeking action on his claim after the common council had acted which such claimant may have by virtue of any statute, ordinance, or law. Thus the resolution while creating a right did not provide an exclusive remedy after the claim had been considered by the common council.

Only two questions are properly raised on this appeal, (1) whether the trial court was in error in denying recovery for the loss on the sale of the furniture, and (2) whether the trial court was in error in finding the plaintiff failed to establish the loss of rental income was caused by the public land-acquisition project. Preliminarily, the defendant attempts to raise in his brief two further questions, (1) whether the trial court had jurisdiction to hear an alleged cause of action for damages not specifically set forth in the resolution,

and (2) whether it was error for the trial court to allow an amendment to set forth a separate cause of action against the defendant for the use of the furniture and fuel oil. These questions are not properly before us on this appeal. The city has not appealed from the judgment granting the plaintiff relief for such items. The plaintiff's appeal does not raise any error concerning those items but goes only to the failure of the judgment to grant relief for the items of loss on the sale of furniture and of rentals.

In support of the claim for loss on the sale of the furniture, the plaintiff as owner testified as to its value, which, of course, he may do. The weight of such testimony, however, is for the trier of the facts.[1] The plaintiff testified he paid $700 for the furniture when he purchased part of it in 1951 and had since acquired additional furniture costing $820. The purchase of the additional furniture was substantiated by the plaintiff's income-tax returns which also showed a total depreciation on the property of $445.53. The plaintiff further testified the personal property was worth $800 and he had sold it for around $200, making a net loss of $600.

Although we may accept the plaintiff's argument as to the value and the amount of his loss, which apparently the trial court did not, it does not follow he is entitled to recover from the city. On the trial the plaintiff's theory of recovery for this item was under the classification of moving expenses and since the cost of moving and storing the furniture would be so excessive, he was forced to sell the property and therefore such loss should be considered damages contemplated by the ordinance. On appeal, the argument was made that this loss should be considered a realignment of personal prop-

---

[1] *Swedowski v. Westgor* (1961), 14 Wis. (2d) 47, 109 N. W. (2d) 549; *Farley v. Spring Garden Ins. Co.* (1912), 148 Wis. 622, 134 N. W. 1054; see *Essock v. Mawhinney* (1958), 3 Wis. (2d) 258, 88 N. W. (2d) 659; Anno. Opinion Evidence—Value, 37 A. L. R. (2d) 967, 972; 3 Wigmore, Evidence (3d ed.), p. 48, sec. 716.

erty. We do not believe either theory is correct. The ordinance provides for reimbursement as damages for moving expenses not exceeding $150 for each family residential unit or $2,000 for each nonresidential site. The plaintiff's loss was from the sale of property not moving expenses. Nor can the loss be considered as the cost of realigning personal property because such cost under the ordinance is for the cost of realignment of personal property on the same site when there is a partial taking or when the realignment is required by elimination or restriction of existing used right of access. Here, there was a complete taking of the property, not a partial taking, and the personal property was not realigned on the same site. No matter how definite the plaintiff proved his loss, it was by nature not compensable under the ordinance.

In support of the alleged rental loss, the plaintiff testified and his income-tax returns showed rentals from the property for 1957 of $2,527; for 1958 of $2,334.50; for 1959 of $1,679.50; and for 1960, until the property was taken, of $1,362. He claimed there were some rumors in 1959 that the property would be condemned and these affected his rentals in 1959 and 1960. He also testified the type of people who rented property in that area were not prompt in paying their rent and sometimes did not pay it at all. This was the extent of his testimony which was not disputed. Plaintiff claims the testimony shows a loss of $655 for 1959 and $688.75 for 1960, or a total of $1,343.75. Plaintiff argues the court is obliged to accept this uncontradicted testimony, relying on *State v. Public Service Comm.* (1962), 16 Wis. (2d) 231, 114 N. W. (2d) 454, and *Thiel v. Damrau* (1954), 268 Wis. 76, 66 N. W. (2d) 747.

This argument is beside the point because even if the testimony is not disregarded, it falls short of proving the project caused $1,343.75 rental loss. The ordinance provides for

reimbursement for only such rental loss as exceeds the normal experience and when such excess rental loss is proved to be caused by the public land-acquisition project. While it is clear there has been some loss of rentals, it is not clear this loss was due to the acquisition of the area for off-street parking. The loss was ascribed by the plaintiff both to rumors of the project and to the type of tenants. The normal experience of rental loss was not proved. The trial court was of the opinion the proof was not sufficient for it to make a finding the loss of income was attributable to the project and to do so would be speculation. We agree.

*By the Court.*—Judgment affirmed.