TRIBLE, Respondent, v. TOWER INSURANCE COMPANY, Appellant: TESCHNER INSURANCE AGENCY, Defendant.

*No. 272. Argued May 8, 1969.—Decided June 6, 1969.*
(Also reported in 168 N. W. 2d 148.)

174

For the appellant there were briefs by *Robert W. Wolfe* and *Wolfe, O'Leary, Kenney & Wolfe,* all of Milwaukee, and oral argument by *Robert W. Wolfe.*

For the respondent there was a brief and oral argument by *L. V. Kaminski* of Princeton.

HANLEY, J.   The following issues are raised on this appeal:

(1) Does the evidence support the trial court's finding of mistake;

(2) Can the mistake of an independent soliciting insurance broker be attributed to the insurance company which eventually accepts the application for insurance;

(3) Does the trial court have authority to reform the contract when reformation of the contract is not sought by the pleadings; and

(4) Does the policy, without being reformed, cover the loss?

If the insurance company is liable under the policy, either as written or as reformed, there are further issues raised concerning the extent of coverage:

(5) Where there is additional insurance for appurtenant buildings, may the insured recover in the absence of proof regarding the value of the loss; and

(6) Where there is additional insurance for loss of rental value, must there be an actual rental loss or is the potential rental loss sufficient for recovery?

### 1.   Finding of Mistake.

The trial court specifically found

"That the plaintiff requested that the property be insured as vacant property, but that through mutual mistake, error or inadvertence the policy issued contained a nonoccupancy clause rather than a vacancy clause. . . ."

The factual findings of the trial court will not be upset unless they are against the great weight and clear pre-

ponderance of the evidence. *Estate of Erbach* (1969), 41 Wis. 2d 335, 340, 164 N. W. 2d 238; *Eberle v. Joint School Dist. No. 1* (1968), 37 Wis. 2d 651, 155 N. W. 2d 573.

The plaintiff testified that he asked for the vacancy permit and that he knew what a vacancy permit was and why it was required. The plaintiff testified that on a previous occasion he had been a partner in a tavern building in Milwaukee, that the building had burned down, and that the insurance company had denied coverage at that time because the building had been vacant for sixty days.

The president of the insurance agency testified that the plaintiff never revealed that the property was unoccupied and that he never asked for a vacancy permit. The secretary of the insurance agency testified that, contrary to plaintiff's testimony, she had never dealt with the plaintiff concerning this property. She further testified that the plaintiff had never requested her to obtain a vacancy permit for the policy.

The trial court obviously believed the testimony of the plaintiff. It was his function to determine the credibility of the witnesses. The finding that the plaintiff requested a vacancy permit and that it was only omitted through mistake, error, or inadvertence is not contrary to the great weight and clear preponderance of the evidence, and it must be sustained.

### 2. Is the Mistake Attributable to the Insurance Company?

It is undisputed that the insurance company issued the policy in accordance with the directions submitted to the company by the insurance agency. The state of the record at this point indicates that, assuming there was an error made, it occurred at the agency level.

The insurance company contends that since it issued the policy as requested, the independent agent's mistake

was not attributable to it. The insurance company further argues that the insurance agency represented as many as 15 different insurance companies; and since the plaintiff did not specifically request the insurance agency to place the policy with the Tower Insurance Company, the agent's mistake does not render the company liable.

The insurance agency here was an authorized agent of the Tower Insurance Company. The agency agreement is in the record. From an analysis of the agency agreement, it can safely be stated that the Teschner Insurance Agency was an authorized soliciting agent for the Tower Insurance Company. The authority of a soliciting agent is set forth at 44 C. J. S., *Insurance,* p. 824, sec. 152:

"As a general rule, a soliciting agent has authority to perform such acts as are incident to the power of soliciting insurance and submitting applications therefor to the company, but he has no authority to bind the company as to matters relating to the subsequent contract of insurance."

The agency agreement specifically provided that the

"Agent has full power and authority to receive and accept proposals for insurance covering such classes of risks as the Company may, from time to time, authorize to be insured . . ."

Once the insurance company in Wisconsin accepts the application from an independent agent, it is not permitted to deny that the insurance agency was acting as its agent in taking the application. Sec. 209.047, Stats., provides:

"Every person who solicits, negotiates or effects insurance of any kind . . . on behalf of any insurance company . . . or person desiring insurance, or transmits an application for a policy of insurance or an annuity contract, other than for himself, to and from any such company . . . shall be held to be an agent of such insurer to all intents and purposes, unless it can be shown that he receives no compensation for such services. . . ."

Since the insurance agency was acting within its express authority in taking the application for insurance from the plaintiff, the mistake of the agency is attributable to the insurance company.

"A principal is liable for the acts of his agent within his express authority, because the act of such agent is the act of the principal. . . ." 3 C. J. S., *Agency*, p. 142, sec. 231.

### *3. Reformation.*

It is undisputed that the plaintiff proceeded under alternative theories during the trial—first, that the policy as written covered the loss, and, second, that if the policy did not cover the loss, the insurance agency was liable for failing to procure the insurance which was requested. Reformation was never an issue in the case. The question which is now before the court is whether the trial court acted within his authority in granting reformation when it was not in issue.

In the first instance, it should be noted that the proof necessary for reformation was fully developed during the trial.

". . . A cause of action for reformation of an insurance policy is allowed when the one seeking reformation shows that because of fraud or mutual mistake the policy does not contain provisions desired and intended to be included. . . ." *Artmar, Inc. v. United Fire & Casualty Co.* (1967), 34 Wis. 2d 181, 186, 148 N. W. 2d 641, 151 N. W. 2d 289.

When a policy of insurance is involved, mutual mistake is proven when the party applying for insurance proves that he made certain statements to the agent concerning the coverage desired, but the policy as issued does not provide the coverage desired.

". . . Where the party applying for insurance states the facts to the agent and relies on him to write the policy, which will protect his interests, and the agent so understands, but fails by mistake to so write the contract, the

mistake is considered mutual. . . ." 13 Appleman, *Insurance*, p. 368, sec. 7609.

In this case the court specifically found that the plaintiff asked for a vacancy permit but the policy when issued only contained a provision for seasonal occupancy. The specific factual findings necessary to support reformation resulted from a trial on the merits. The parties fully litigated the question of mistake and it was decided adversely to the insurance company.

While it has been stated that

"Without an allegation of fraud, mutual mistake, or a prayer for reformation of the contract, it was the duty of the court to construe the contract as written. . . ." *Newport Mining Co. v. Firemen's Ins. Co.* (1921), 174 Wis. 401, 403, 183 N. W. 161.

this court has, in the past, granted reformation on appeal even though the issue was not raised by the pleadings, the parties, or the trial court.

". . . The issue of reformation was not raised by the pleadings and there was no trial of that issue, but the court having found the fact that with the undisputed evidence as to intent of the parties warrants reformation, no need appears to remand the case with instructions to permit amendment of the complaint to raise the issue of reformation and for trial of that issue, as would manifestly be required in the interest of justice but for the finding and undisputed evidence referred to." *Fountain v. Importers & Exporters Ins. Co.* (1934), 214 Wis. 556, 561, 252 N. W. 569.

The testimony of the insurance agent in the *Fountain Case, supra,* did not conflict with the insured as did the testimony in this case. That does not mean that the result here should be any different. The question of mistake was fully litigated in this case and a specific finding of fact was made on that issue.

In addition to the above, it is the general rule that when a party sues to enforce an insurance contract and presents

facts which entitle him to reformation, the trial court may grant judgment on the insurance contract, as modified, without a specific decree of reformation.

". . . Moreover, according to the prevailing view, where the pleadings and evidence in an action upon an insurance policy are such as would warrant the court in reforming the policy, the court may give effect to the true contract, and enforce the policy as if it were reformed, without making a formal decree of reformation." 43 Am. Jur. 2d, *Insurance*, p. 407, sec. 357.

The rule above cited was apparently adopted in Wisconsin in *Lumbermen's Nat. Bank v. Corrigan* (1918), 167 Wis. 82, 166 N. W. 650. In that case an insurance policy was reformed, in the absence of pleadings requesting reformation, because

". . . all the facts were found which justified and called for reformation, and the judgment can only be sustained on the theory of reformation. . . ." *Lumbermen's Nat. Bank v. Corrigan, supra,* at page 87.

The plaintiff sued on the contract and presented all the facts entitling him to reformation and judgment on the contract as reformed. The failure to order an amendment of the pleadings and the failure to enter a specific decree of reformation do not necessitate a reversal of the judgment.

### 4. Did the Policy Cover the Loss Without Being Reformed?

This issue is rendered moot by a decision that judgment could be entered on the policy as reformed.

One other question raised by the insurance company should be considered, however. The insurance company contends that it was inconsistent to render a judgment on the policy while at the same time dismissing the cause of action against the insurance agency. The action is not inconsistent at all. The plaintiff presented his case under

alternative theories; he was not entitled to two judgments. Since he prevailed on his contract cause of action, he was not entitled to recover on his tort action against the insurance agency.

The insurance company merely answered the complaint and never sought indemnification from the insurance agency. Moreover, the judgment dismissing the plaintiff's cause of action against the insurance company has not been appealed from, and it is not properly before the court at this time.

Because the insurance company is liable to the plaintiff under the policy as reformed, a discussion of the remaining issues concerning the extent of coverage will follow.

### 5. Additional Insurance on Appurtenant Buildings.

The lodge building, which was entirely destroyed by fire, was insured for $14,000, and the contents were insured for $1,000. Under sec. 203.21, Stats. (the Valued Policy Law), the amount stated on the policy conclusively established the value of the insured property and the amount of the loss when the lodge was destroyed. If the policy is deemed to cover the loss, the insurance company does not dispute the value of the building or the contents.

This policy, however, also made provision for additional coverage:

"The Insured may apply up to ten per cent (10%) of the amount specified for the described dwelling, as an additional amount of insurance, to cover private structures appertaining to the described dwelling premises and located thereon but not structures used for mercantile manufacturing or farming purposes."

The laundry-workshop building was appurtenant to the lodge and it also was entirely destroyed by the fire. The insurance company contends that the policy, even as reformed, did not provide coverage for the laundry-workshop building for two reasons:

(a) The lodge was not a "dwelling;" and

(b) There was no proof regarding the actual value of the building.

The coverage for appurtenant buildings is limited to ten percent of the amount specified for the described "dwelling." The insurance company contends that the lodge was never a "dwelling" because it was never occupied.

The term "dwelling" is not defined in any portion of the policy or the endorsements. Webster's New International Dictionary (3d ed.) defines "dwelling" as "a building or construction used for residence." The lodge in question contained nine upstairs sleeping rooms, two bathrooms, a recreation area, a dining room, and a kitchen. The letter from the insurance agency requesting coverage on the property referred to the lodge as a seasonal dwelling.

We think the lodge belongs under the category referred to as "dwelling." The fact that it was not occupied does not defeat coverage. In the first place, the additional insurance clause did not mention occupancy. In the second place, the policy as reformed permitted the property to be vacant and unoccupied.

The insurance company's contention that the laundry-workshop building was not covered as an appurtenant building must be denied insofar as it relies on the fact that the lodge was not a dwelling.

In support of the claim for loss on the laundry-workshop building, plaintiff attempted to testify concerning the value, but his testimony was objected to on the ground that the plaintiff was not qualified as an appraiser. The plaintiff then testified that the laundry-workshop building was approximately 30 feet long, 50 feet wide, and eight or nine feet high. The building was of log construction. The plaintiff made no offer of proof concerning the value of the building.

It was erroneous for the trial court to exclude the plaintiff's testimony concerning the value of the building.

The general rule is that a nonexpert owner of personal property may testify concerning the value of his personal property. *See:* Annot. (1954), 37 A. L. R. 2d 967; *Gorski v. Milwaukee* (1964), 23 Wis. 2d 517, 127 N. W. 2d 771; and *Swedowski v. Westgor* (1961), 14 Wis. 2d 47, 109 N. W. 2d 549. In Wisconsin the owner is also competent to testify concerning the value of real estate. *Farley v. Spring Garden Ins. Co.* (1912), 148 Wis. 622, 627, 134 N. W. 1054. The weight to be given to a non-expert owner's testimony is for the trier of facts. While it would have been within the trial court's discretion to disregard the testimony, it was clearly erroneous to refuse to hear the owner's testimony. The error was further compounded by granting damages of $1,400 for the destruction of the building in the absence of any proof of its value.

The plaintiff contends that it is obvious that a building of log construction which is 30 feet by 50 feet has a value greater than $1,400. Certainly we cannot take judicial notice of that fact. Under the circumstances any conclusion as to value would be the result of pure conjecture or speculation.

The plaintiff also contends that the Valued Policy Law applies to the appurtenant structures as well as the described premises. Sec. 203.21, Stats., provides:

"Whenever any policy insures real property and the property is wholly destroyed, without criminal fault on the part of the insured or his assigns, the amount of the policy shall be taken conclusively to be the value of the property when insured and the amount of loss when destroyed."

The policy did not describe or attempt to value the appurtenant structures. The policy merely stated that the appurtenant structures were insured *"up to* ten per cent (10%)" of the amount specified for the described dwelling. (Emphasis supplied.) Without establishing

the value of the loss, there can be no recovery under the policy.

The record simply does not support the award of $1,400 for the destruction of the laundry-workshop building. The amount of the judgment must be reduced by this amount plus the interest attributed to this sum. Since it was erroneous to exclude the testimony of the plaintiff, he must be given the option of accepting the reduced amount of damages or a new trial.

### 6. Additional Insurance for Loss of Rent.

This policy also provided that

"The Insured may apply up to ten per cent (10%) of the amount specified for the described dwelling, as an additional amount of insurance, to cover rental value, but not exceeding one-twelfth (1/12) of said ten per cent (10%) for each month the described dwelling or appurtenant private structures . . . or parts thereof are untenantable."

The plaintiff contends that the Valued Policy Law applies to this section of the policy and that he is entitled to his lost rental value up to the date of trial even though the premises were not occupied as a resort.

There was no proof of reasonable rental value at the trial and the trial court denied this claim.

Both this argument and the one concerning the application of the Valued Policy Law to appurtenant structures must be treated in the same manner. There are no cases found which discuss the Valued Policy Law as it applies to "additional" insurance. We think the Valued Policy Law applies only to the described premises and that the value of losses covered by additional insurance must be proven.

We conclude that the judgment must be reduced by the sum of $1,400. The plaintiff is accorded, at his option, a new trial confined to the issue of damages for the laundry-workshop building.

*By the Court.*—The judgment is modified by reducing the amount of plaintiff's damages from $16,850 to $15,450, exclusive of costs and interest, unless within twenty days from June 6, 1969, the plaintiff shall file with the clerk of this court a notice in writing that he elects to have a new trial limited solely to the damage issue discussed in the opinion. If such notice electing such new trial is timely filed, the judgment will be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.