HEARD, Judge.
Suit was brought by the Independent Presbyterian Church to recover for a fire loss sustained by it and covered by a policy issued by American Employers’ Insurance Company. Defendant denied coverage, and judgment was rendered in its favor on the basis that there was only a binder between the parties which expired before the loss occurred. Plaintiff perfected a devolutive appeal.
On November 27, 1970, the church purchased a family dwelling from John T. and Frances D. Porath to be used as a church. The dwelling was covered by a fully paid fire insurance policy issued by American Employers’ to the Poraths in the amount of $8,000 for the policy period, June 23, 1968 to June 23, 1971. At the closing of the sale, the Poraths informed the church that they were donating the unexpired balance of the policy to the church. Both the Poraths and Amos Ortego, an elder of the church, informed N. W. McClure & Sons, the issuing insurance agency, of the property transfer, and Curt McClure told Orte-go that it would be agreeable to him if the church took over the unexpired part, but that the property would have to be rerated as it was to be used for commercial purposes. The actual policy was in the hands of the holder of the Porath mortgage, but when he was paid at the time of the sale, the policy was delivered to Ortego who turned it over to James S. Nash, church treasurer. While there is some dispute as to whether or not it was McClure or the mortgage holder who delivered the policy, it is evident that McClure knew the policy was in the church’s possession.
McClure wrote the insurance company on December 2, 1970, advising them of the purchase of the insured home by the plaintiff for use as a church effective November 27, 1970. The letter stated, in part:
“Between the time that we have the property rerated by the Louisiana Rating and Fire Prevention Bureau, we would like for the coverage as contained in this policy to be bound as is written. After the premises are rerated we will make the necessary amendments to both the premium and the forms used on this policy.”
The property was rerated some time in January, and McClure spoke to Ortego and/or Nash several times concerning the policy. McClure suggested that the church *395 increase its amount of coverage, contents coverage and add liability coverage in an attempt to provide the best coverage at the best premium price. His testimony is that the church people kept putting him off and never gave him a decision as to what to do. Plaintiff’s witnesses testified that negotiations were being conducted with another insurance agent, and Nash stated he told McClure that nothing would be done with the policy until it expired.
Following a conversation, McClure wrote to Nash on April 26, 1971, again stating his feelings as to the amounts and types of coverage he felt were necessary. He received no reply. A fire completely destroyed an outbuilding and burned some trees and shrubs on the insured premises on May 26, 197L
By letter dated May 27, 1971, McClure was informed by another agency that it would cover the property upon the expiration of defendant’s policy.
The trial court took notice that the policy contained a provision requiring the written consent of the company for a valid assignment. It went on to state if the December 2 letter and the company’s failure to reject this assignment are considered as its consent, the letter must also be considered as a binder. Since the fire occurred more than 90 days after the effective date of the binder and it was not renewed or extended, there was no coverage at the time of the loss. LSA-R.S. 22:631.
Defendant contends that (1) there was never a valid assignment and (2) if the December 2 letter was a binder, it expired either upon the rerating of the property or at the end of 90 days pursuant to the statute, It is our opinion, however, that defendant did provide coverage.
The evidence is conclusive that plaintiff should be covered under the Porath policy because of the actions and inac-tions of both defendant and its agent. Defendant’s contention that there was no valid assignment is without merit. McClure was informed of the transfer of the property and insurance and he agreed to it verbally. His letter to the company clearly told of these transactions. Since the company never indicated it would not consent to this assignment by cancelling the policy and returning the premiums, the trial court correctly indicated there was an effective, although unwritten, assignment. His conclusion as to its being a binder, however, was erroneous. From the time the agent was notified of the transfer, he treated plaintiff as the insured under the policy. The policy was never cancelled. In all his negotiations with the church, McClure never advised them that the policy was no longer in effect for any reason, nor did he ever call upon them to pay any additional premium for commercial coverage or accept any change in the form of coverage of the policy. His conversation of rerat-ing and adjustments which should be made in the coverage could easily be considered a sales pitch to increase their coverage which they felt was unnecessary. McClure never specifically told plaintiff that the rerating and adjustment of the premium was necessary to continue coverage. As late as a month after the supposed binder had expired, defendant’s agent was treating the policy as in effect and was continuing his negotiations with plaintiff as evidenced by his April 26, 1971, letter.
It is also evident that plaintiff relied upon defendant’s actions. The church people all testified they felt they were covered under the Porath policy until it expired and were never told otherwise. Additional evidence on this point is the fact that the coverage they acquired from another agency did not begin until the expiration of the Porath policy. Even defendant’s agent, McClure, testified that he felt the policy was still in effect, although it was for commercial coverage which excludes outbuildings unless specifically covered.
LSA-R.S. 22:692 provides:
“No policy of fire insurance issued by any insurer on property in this state *396 shall hereafter be declared void by the insurer for the breach of any representation, warranty or condition contained in the said policy. . . . Such breach shall not avail the insurer to avoid liability unless such breach (1) shall exist at the time of the loss, and be either such a breach as would increase either the moral or physical hazard under the policy, . . .. Notwithstanding the above provisions of this Section, such a breach shall not afford a defense to a suit on the policy if the fact or facts constituting such a breach existing at the time of the issuance of the policy and were, at such time, known to the insurer or to any of his or its officers or agents, or if the fact or facts constituting such a breach existed at the time of the loss and were, at such time, known to the insurer or to any of his or its officers or agents, except in case of fraud on the part of such officer or agent or the insured, or collusion between such officer or agent and the insured.”
This article has been said to be similar to the doctrine of equitable estoppel. (See the comment, Waiver and Estoppel in Louisiana Insurance Law, 22 La.L.Rev. 202, 211). While it has been urged by defendant that the doctrines of estoppel and waiver are limited to the insurer’s rights, under conditions of the policy to avoid liability, and cannot be used to extend or enlarge coverage beyond that set forth in the policy [see LeDoux v. Old Republic Life Insurance Company, 233 So.2d 731, La. App. 3d Cir. 1970, and authorities cited therein], we do not find that rule applicable to the instant case. Plaintiff seeks nothing beyond the terms of the Porath policy under which defendant is still obligated.
Furthermore, even if extended coverage can be shown, we find that defendant has ratified the acts of its agent. Many cases in our jurisprudence hold that the unauthorized contract of an agent is ratified by the principal who, with knowledge of the contract, does not repudiate it within a reasonable time, but instead accepts and retains the benefits. LeDoux, supra, p. 736. The instant case clearly comes within this doctrine. American Employers’ had knowledge of plaintiff’s purchase and intended use of the property and of the assignment of the policy a sufficient period of time to afford it a reasonable opportunity to repudiate the unauthorized acts of its agent. It made no such repudiation, but retained the premiums already paid. Under the circumstances, defendant ratified McClure’s actions.
As to the amount of the award, the pictures submitted as evidence clearly show the outbuilding to be a total loss. Under the terms of the policy, the outbuilding was insured for up to 10% of the amount of the insurance applicable to the principal dwelling ($8,000) or $800. LSA-R.S. 22:695 (A) provides that in case of .total destruction, the insurer is to pay the total amount for which the property is insured. The insurer may not go beyond the policy and show the insured’s interest is worth less. Stevenson v. Central National Insurance Company of Omaha, Neb., 239 So.2d 659 (La.App. 1st Cir. 1970). Plaintiff is entitled to an award of $800 subject to the $100 deductible. Plaintiff has shown no proof of damages to any trees or shrubs and therefore is not entitled to an award for them.
In accordance with the above, we reverse the judgment of the trial court and hereby decree there shall be judgment in favor of plaintiff, Independent Presbyterian Church against American Employers’ Insurance Company in the full sum of Seven Hundred and No/100 ($700.00) Dollars with legal interest from judicial demand until paid and all cost.
Before AYRES, BOLIN, PRICE, HEARD, and HALL, JJ.
AYRES, Judge.
To afford an opportunity to review the correctness vel non of the court’s original *397 opinion and decree, a rehearing was granted. Defendant-appellee complains of the court’s alleged erroneous application of the law to the facts found by the court to exist in this case. The relevant facts are set forth in our original opinion.
It is first contended that error was committed in holding that the valued policy statute, LSA-R.S. 22:695(A) applied to a provision of the policy affording coverage for additional structures in an amount not exceeding a specified percentage of the coverage afforded the principal structure insured. The principal structure was a one-and-a-half-story family dwelling, the value of which, as set forth in the policy, was $8,000. An outbuilding on the premises, characterized as a private structure, was destroyed by fire.
The policy, with reference to private structures, provides:
‘'This term shall mean private structures (other than the described dwelling and additions in contact therewith) appertaining to the described premises and located thereon, but not structures used in whole or in part for commercial, manufacturing or farming purposes, nor any structures (except structures used principally for private garage purposes) which are wholly rented or leased to other than a tenant of the principal dwelling covered hereunder.” (Emphasis supplied.)
With respect to the extension of insurance coverage to such private structures, the policy provides:
“The Insured may apply up to 10% of the amount of insurance applicable to the principal dwelling item under this policy as an additional amount of insurance to cover loss to Private Structures as defined in paragraph B of Section III [quoted hereinabove] by any peril insured against.”
Without any proof whatever in the record as to the value of the outbuilding destroyed, it is contended that the court erred in holding that the valued policy statute is applicable to a provision in the policy providing coverage for a private structure in an amount not in excess of but up to a specified percentage of coverage afforded the principal structure or dwelling. We have not been cited any authority in the jurisprudence of this State involving the question presented here; nor does our own research reveal such an authority.
A general rule is, however, set forth in Couch on Insurance 2d, Vol. 15, p. 390, § 54:121, to the effect that:
“A valued policy statute does not apply to a provision providing a percentage coverage of additional structures. To illustrate, a provision in an insurance contract that the insured may apply up to 10 percent of the amount of the policy to cover private structures appertaining to and located on the premises described therein means that if the insured suffers damage to or destruction of any structure on the premises by any of the causes stated in the policy, he may, at his option, recover therefor in an action on the policy the amount of his actual damage, not to exceed in any event 10 percent of the amount of the policy.”
In Morris v. American & Foreign Ins. Co., 150 Neb. 765, 35 N.W.2d 832 (1949), it was held that the valued policy statute, providing that whenever any policy of insurance shall be written to insure any real property in that State against loss by fire, and the property insured shall be wholly destroyed, the amount of the insurance written in such policy shall be taken conclusively to be the true value of the property insured and the true amount of loss and measure of damages, has no application to a provision providing a maximum of 10% coverage of private structures appertaining to and located on the premises. In this connection, the Supreme Court of Nebraska pointed out:
“The appellees claim that because of the language of the policies that the insured may apply up to ten percent of the $5,000 of insurance to any loss suffered *398 on any private structure appertaining to and located on the premises described therein, and because of the provisions of section 44-380, R.S.1943, the valued policy law, they are entitled to recover $500 for the total loss of the garage destroyed by fire. The district court sustained this view of the contracts and of the law.
“The language of the policies in this aspect is not burdened with ambiguity or uncertainty, and clearly means that if the insured suffers damage to or destruction of any private structure pertaining to and located on the premises (except structures used for mercantile, manufacturing or farming purposes) by any of the causes described in the policy of the insured, he may at his option recover the amount of his actual loss not to exceed in any event ten percent of the principal amount of the policy. If the actual loss of the insured is less than ten percent of the amount of the policy he may only exact payment of the amount of his loss. If his loss is ten percent or more than ten percent of the amount of the policy, then he may recover only ten percent of the amount thereof. Section 44 — 380, R.S.1943, has no application to or influence upon this provision. That statute provides that ‘Whenever any policy of insurance shall be written to insure any real property in this state against loss by fire, * * * and the property insured shall be wholly destroyed, * * * the amount of the insurance written in such policy shall be taken conclusively to be the true value of the property insured and the true amount of loss and measure of damages.’ The only real property insured by the policies here in question was the house described therein. The garage was not mentioned. Its value in any view of the evidence was less than ten percent of the amount of the policies. Appellees were only entitled to recover the actual value of the garage at the time of the fire and this according to the record in this case was less than $500. The action of the court permitting appellees to have judgment for that amount as their loss because of the destruction of the garage cannot be upheld.” (Emphasis supplied.)
35 N.W.2d 835.
In Trible v. Tower Insurance Co., 43 Wis.2d 172, 168 N.W.2d 148 (1969), the Supreme Court of the State of Wisconsin held that where a fire policy permits an insured to apply up to 10% of the amount specified as coverage for a described dwelling to cover appurtenant structures and the policy values the dwelling but attempts to place no value on appurtenant structures, the value of appurtenant structures must be established before there can be a recovery of their destruction notwithstanding the valued policy law of that State. In that case, it was pointed out that:
“The plaintiff also contends that the Valued Policy Law applies to the appurtenant structures as well as the described premises. Sec. 203.21, Stats., provides :
“ ‘Whenever any policy insures real property and the property is wholly destroyed, without criminal fault on the part of the insured or his assigns, the amount of the policy shall be taken conclusively to be the value of the property when insured and the amount of loss when destroyed.’
“The policy did not describe or attempt to value the appurtenant structures. The policy merely stated that the appurtenant structures were insured ‘up to ten per cent (10%)’ of the amount specified for the described dwelling. (Emphasis supplied.) Without establishing the value of the loss, there can be no recovery under the policy.” (Emphasis supplied.)
168 N.W.2d 156-157.
In the instant case, the insurance policy insures the principal dwelling in the sum of $8,000. No value whatsoever is set forth for appurtenant structures. The provision *399 in the policy for extended coverage whereby the owner could apply up to 10% of the value of the principal dwelling to cover additional structures on the premises does not require.the insurer to pay 10% of the face amount of the policy for the destruction of any additional structure, but requires the insured to submit proof of the value of the destroyed outbuilding and sets a limit on the amount of recovery. As heretofore noted, there is no proof whatever in the record as to the value of the outbuilding destroyed. Without such proof, no judgment permitting recovery for the loss is possible.
In view of our aforesaid conclusions, no necessity exists for a discussion or determination of the other defenses urged by the defendant-appellee.
For the reasons assigned, the judgment appealed, which rejected plaintiff-appellant’s demands, is affirmed at its costs.
Affirmed.